UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNIE SUE KOOG, Individually and as Personal Representative on Behalf of the Estate of ARTHUR KOOG and all Wrongful Death Beneficiaries,<br><br>*Plaintiff*,<br>v.<br><br>A.W. CHESTERTON COMPANY;<br>LAMONS GASKET COMPANY;<br>RESCO HOLDINGS, L.L.C., individually and a successor to entities including but not limited to Kell Holding Corporation, Henley/MWK Holding Inc., Pullman Incorporated, the M.W. Kellogg Company, and Wheelabrator-Chicago Inc.;<br>TRIPLEX, INC.;<br>ARMSTRONG INTERNATIONAL, INC.;<br>ATLAS COPCO NORTH AMERICA, INC.;<br>ABB INC., as successor to Bailey Controls Company;<br>CBS CORPORATION (a Delaware corporation) f/k/a Viacom Inc., successor by merger to CBS Corporation individually and as successor to Westinghouse Electric Corporation and as successor to Hagan Instruments;<br>AQUA-CHEM, INC. (d/b/a Cleaver-Brooks Division);<br>CRANE CO.;<br>EMERSON ELECTRIC CO., as successor to Crosby Valves;<br>I.M.O. INDUSTRIES, INC., individually and as successor-in-interest to De Laval Turbine, Inc. and Warren Pumps, Inc.;<br>FOSTER WHEELER ENERGY CORPORATION;<br>GENERAL ELECTRIC COMPANY, ("GE"), individually and a successor to Masoneilan Controls;<br>GRAY MARINE DIESEL ENGINES d/b/a Continental Motors; | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No.<br><br>**DEFENDANT FOSTER WHEELER ENERGY CORPORATION'S NOTICE OF REMOVAL** |

| | | |
|---|---|---|
| GRAY MARINE MOTOR CO.;<br>KENNEDY VALVE MFG. CO., d/b/a MCWANE;<br>LUNKENHEIMER VALVE COMPANY d/b/a Cummins Inc.;<br>MANCHESTER TANK;<br>WESTERN TANK & STEEL CORPORATION a/k/a Manchester Tank;<br>MCWANE INC.;<br>UNITED STATES STEEL INTERNATIONAL, INC. d/b/a USX Corp. and f/k/a United States Steel International (New York), Inc., as successor to National Steel;<br>FMC CORPORATION, individually, on behalf of and as successor int interest to Peerless Pump Co.;<br>GRUNDFOS PUMPS CORPORATION as successor to Peerless Pump Co.;<br>RHEEM MANUFACTURING COMPANY, individually and as successor interest to Orendorff Manufacturing Company;<br>RILEY STOKER CORPORATION, n/k/a Babcock Borsig Power, Inc.;<br>TECHNOTHERM CORPORATION;<br>UNION BOILER WORKS, INC.;<br>US BOILER COMPANY, INC., a/k/a US Boiler Company, LLC as successor in interest to Burnham Boilers;<br>VOGT VALVES, INC.;<br>OMB VALVES, INC.;<br>MESTEK, INC., individually and as successor in interest to The Hydrotherm Corporation, as successor in interest to Vulcan Radiator Company;<br>CELEROS FLOW TECHNOLOGY, LLC as successor in interest to Copes-Vulcan, Inc.;<br>WEIL MCCLAIN;<br>WM TECHNOLOGIES LLC d/b/a Weil McClain;<br>THOMAS C. WILSON LLC;<br>WORTHINGTON PUMPS a/k/a Flowserve Corporation;<br>JOHN ZINK COMPANY, LLC; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

| | | |
|---|---|---|
| ZURN INDUSTRIES, INC., a/k/a Zurn Industries, LLC individually and as successor in interest to Erie City Iron Works, Inc.;<br>EXXON CORPORATION;<br>Exxon Mobil Corporation, individually and as successor in interest to Exxon Company, U.S.A., Exxon Chemical Company U.S.A., and Mobil Oil Corporation;<br>HOECHST CELANESE CHEMICAL, INC, individually and f/k/a Celanese Chemical Company, Inc, and Hoechst Celanese Chemical Group;<br>SHELL USA INC., f/k/a Shell Oil Company, individually and as successor in interest to Shell Chemical Corporation;<br>ARTHUR BROTHERS, INCORPORATED;<br>BERRY GP, INC.;<br>4520 CORP., INC., as successor in interest to Benjamin F. Shaw Company;<br>CF BRAUN & CO.;<br>FLUOR CORPORATION (Delaware);<br>FLUOR CORPORATION (California);<br>FLUOR ENTERPRISES, INC., individually and as successor in interest to Fluor Corporation and as successor in interest to Daniel International Corporation;<br>HB ZACHRY COMPANY;<br>MUNDY CONSTRUCTION COMPANY;<br>MUNDY INDUSTRIAL MAINTENANCE, INC., individually and as successor in interest to San Jacinto Maintenance, Inc., and as successor in interest to Triangle Maintenance;<br>NATKIN & COMPANY;<br>PARSONS ENERGY & CHEMICALS GROUPS, INC., f/k/a S.I.P., Inc., individually and as successor in interest to S.I.P., Inc.;<br>PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP, INC.;<br>REF-CHEM;<br>SANTA FE BRAUN, INC.;<br>S.I.P., INC., f/k/a Parsons Chemical Engineering Inc.;<br>METROPOLITAN LIFE INSURANCE COMPANY;<br><br>*Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |

TO THE HONORABLE JUDGE OF THIS UNITED STATES DISTRICT COURT:

Pursuant to Title 28 U.S.C. §§ 1331, 1442(a)(1), and 1446, Defendant Foster Wheeler Energy Corporation ("Foster Wheeler"), by and through its undersigned attorney of record, hereby gives Notice of Removal of an action filed against them in the District Court of Harris County, Texas. In support, Foster Wheeler respectfully offers the following:

**Preliminary Matters**

1. On January 31, 2025, Plaintiff Connie Sue Koog, Individually and as Personal Representative on behalf of the Estate of Arthur Koog and all Wrongful Death Beneficiaries ("Plaintiffs") filed a lawsuit in the District Court of Harris County, Texas, against Foster Wheeler and several other defendants. *See* Plaintiffs' Complaint, attached hereto as Exhibit A. Plaintiffs' allegations arise out of Decedent Arthur Koog's ("Decedent" or "Mr. Koog") development of mesothelioma resulting from his alleged exposure to various asbestos-containing products during the course of his lifetime. *See generally id.*

2. Plaintiff's Complaint alleges that Mr. Koog "was exposed to asbestos and asbestos-containing products during his service in the United States Navy and thereafter in his civil service employment as a naval fireman, boiler tender, boilermaker, pipefitter, power plant controlman, steam plant operator, and plumber from 1954-1990." *Id.* at 1.

3. Apart from Plaintiffs' general allegations that Mr. Koog was exposed to asbestos and asbestos-containing products during his service in the United States Navy, Plaintiffs' Complaint did not provide any specificity as to what vessels or ships Mr. Koog worked aboard during his Navy service and career. *See id.* To that end, because Plaintiffs' Complaint did not specify the actual vessels that Mr. Koog served aboard, Foster Wheeler was unable to conduct research necessary to determine whether this matter was removable.

4. Plaintiffs' Complaint also contained allegations that Mr. Koog was exposed to asbestos from his post-Navy work in his civil service employment, though Plaintiff did not identify any specific locations where Mr. Koog would have been exposed to asbestos during his career. *See id.*

5. On March 25, 2025, Plaintiffs served a letter to Foster Wheeler providing additional information regarding Mr. Koog's Navy service and purported exposure to asbestos associated with Foster Wheeler equipment. *See* Plaintiffs' March 25, 2025 Correspondence, attached hereto as Exhibit B. Indeed, it was not until Plaintiffs' March 25, 2025, letter that Plaintiffs specified, for the first time, that Mr. Koog served aboard the *USS W.A. Mann* during his service in the Navy. *See id.* at 1. Plaintiffs further asserted that while in the Navy, Mr. Koog served as a "Boilerman 1st class aboard the *USS W.A. Mann*. Plaintiffs also alleged that "Mr. Koog was exposed to asbestos through its use on Foster Wheeler Boilers and Foster Wheeler 'constant pressure pump governor valves.'" *Id.* Plaintiffs further alleged that "Mr. Koog was also exposed to the Foster Wheeler valves throughout his time in the Navy and his time in the civil service at the Naval Air Stations in China Lake, CA and Kinsville, TX." *Id.*

6. Therefore, on March 25, 2025, Foster Wheeler, upon service of Plaintiffs' correspondence identifying what vessels Mr. Koog served aboard, was able to conduct the research necessary to determine whether this matter was removable. *See id*.

7. This Notice of Removal is timely in that it is filed within thirty (30) days of service of Plaintiffs' correspondence, from which Foster Wheeler ascertained that this case is removable. 28 U.S.C. § 1446(b).

**Nature Of The Case**

8. This case is based on Plaintiffs' allegation that Mr. Koog's asbestos-related disease, specifically mesothelioma, was caused by Mr. Koog's exposure to asbestos dust and/or fibers.

9. Plaintiffs assert failure to warn claims, along with negligence and strict liability claims against Defendants based on various theories.

**Grounds For Removal**

10. Plaintiffs' claims stem, in part, from Mr. Koog's alleged exposure to asbestos through his service in the United States Navy. Foster Wheeler manufactured boilers and associated equipment for use on Navy ships and at Navy installations pursuant to contracts and specifications executed by the Navy. Foster Wheeler has confirmed that it manufactured boilers and associated equipment onboard the *USS W.A. Mann*. Thus, the basis for this removal is that in the manufacture and sale of such equipment for the Navy, including all aspects of warnings associated with that equipment, Foster Wheeler was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1). *See generally* Affidavit of J. Thomas Schroppe dated December 18, 2009 ("Schroppe Aff."), attached hereto as Exhibit C.

11. Should Plaintiffs file a motion to remand this case, Foster Wheeler respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

**Federal Officer Removal**

12. As recognized in a landmark decision by the United States District Court for the Eastern District of Pennsylvania (MDL-875) in *Hagen v. Benjamin Foster Co.*, 739 F.Supp.2d 770 (E.D. Pa. 2010), Foster Wheeler has a federal defense to this action. In examining virtually identical evidence submitted in the case at bar, Judge Eduardo C. Robreno found that the defendant, Foster Wheeler, raised a colorable defense to plaintiff's failure to warn claims, *i.e.,* government contractor immunity from liability for injuries arising from any exposure to asbestos related to boilers and auxiliary equipment aboard Navy vessels, insofar as they were designed and manufactured by Foster Wheeler according to strict Navy specifications. Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiff's claims and acts it

performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989). Foster Wheeler is not required to notice and obtain the consent of any other defendant in this action for removal under § 1442(a)(1); *see also e.g. Ely Valley Mines, Inc. v. Hartford Accident Indemnity Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981); *National Audubon Society v. Dept. of Water & Power for the City of Los Angeles*, 496 F. Supp. 499, 509 (C.D. Cal. 1980).

13. In reaching his conclusion, Judge Robreno discussed in detail the three elements necessary for removal under this statute. First, a defendant must demonstrate that it is a "person" within the meaning of the statute. *Hagen,* 739 F.Supp.2d at 776. The definition of a "person" includes a corporation. *Id.* Second, defendants must raise a colorable claim to a federal law defense. *Id.* As previously stated, a colorable claim to a federal defense can be predicated upon the federal government contractor defense. *Id.* Third, the defendant must establish that the suit is for any act under color of federal office, *i.e.*, there is a causal connection between the charged conduct and asserted official authority. *Id.* Causation exists if the predicate acts of the state court suit were undertaken while the person was acting as or under a federal officer, and the acts were under color of the relevant federal office. *Id.*

14. The second and third elements require a substantial degree of federal control over defendant's work and a causal nexus between the defendant's actions under the federal officer and plaintiff's state court claims. *Hagen*, 739 F.Supp.2d at 776. Although set forth in the statute as two separate requirements, Judge Robreno recognized that the evidentiary similarities between the "acting under" and "causal nexus" prongs have often prompted courts to collapse them into one single requirement. *Id.* at 784 (citing *Good v. Armstrong World Indus., Inc.*, 914 F.Supp. 1125, 1128 (E.D. Pa 1996) ("The 'acting under' language in the statute forces [the defendant] to show a causal nexus between the plaintiff's claims and the conduct taken pursuant to direction from a federal officer.")).

15. What constitutes sufficient federal control is often central to a court's decision to uphold removal or remand a case. Like the *Hagen* court, federal courts across the country, including the Third Circuit, have upheld removal because defendants were sued as a result of designing and manufacturing products pursuant to detailed and strict government specifications. *See Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 815 (3d Cir. 2016) (reversing lower court's grant of remand and finding government contractor defense "colorable," meaning that the defense was legitimate and could reasonably be asserted, given the facts presented and the current law); *see also Sawyer v. Foster Wheeler LLC*, 860 F.3d 249 (4th Cir. 2017) (reversing lower court's grant of remand and finding Foster Wheeler satisfied federal officer removal statutory requirements); *Ripley v. Foster Wheeler LLC*, 841 F.3d 207 (4th Cir. 2017) (reversing lower court's grant of remand and ruling Foster Wheeler's evidence established colorable government contract defense to plaintiff's failure to warn claims); *Cuomo v. Crane Co.,* 771 F.3d 113 (2d Cir. 2014) (Crane Co. provided sufficient evidence that easily cleared the low threshold for asserting a federal contractor defense); *Zeringue v. Crane Co.,* 846 F.3d 785, 789-90 (5th Cir. 2017) (section §1442(a)(1) is a "pure jurisdictional statute" that permits a federal defense "to serve as the federal question that endues the court with jurisdiction"); *Leite v. Crane Co.,* 749 F.3d 1117 (9th Cir. 2014) (plaintiff's failure to warn claims and defendant's government contractor defense is one for the federal and not state court to decide); *Ruppel v. CBS Corporation,* 701 F.3d 1176 (7th Cir. 2012) (reversing lower court decision to remand and finding removal proper where Westinghouse established through affidavits that it had a colorable government contractor defense to plaintiff's claims).

16. The predominant view holds that "a colorable federal defense need only be plausible." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir.2010); *see also Ruppel*, 701 F.3d at 1182. In the context of a "failure to warn" case, the defendant need not show that the government expressly barred or broadly preempted the inclusion of asbestos warnings on its products. *See Kerstetter v. Pacific*

*Scientific Co.,* 210 F.3d 431, 438 (5th Cir.), *cert. denied*, 531 U.S. 919 (2000) (government contractor defense is available in "failure to warn" claims where the evidence shows that the lack of a warning reflects governmental direction or control rather than the unfettered discretion of the product's manufacturer, and applies wherever: 1) the government approved or authorized the warnings which the plaintiff contends were inadequate or incomplete; 2) the warnings provided by the manufacturer conformed to the warnings as approved or authorized by the government; and 3) the manufacturer warned the government as to any product hazards known by the manufacturer but unknown by the government).

17. As stressed in *Kerstetter*, "[t]he government need not prepare the specifications to be considered to have approved them." *Id.* at 435. The only material issue is whether the manufacturer's designs and specifications were subjected to "substantial review" rather than a mere "rubber stamp" approval. *Id.* While this determination is necessarily fact specific, "substantial review" has plainly been shown upon evidence of a "'continuous back and forth' between the contractor and the government." *Id.* In this regard, "[t]he specifications need not address the specific defect alleged; the government need only evaluate the design feature in question." *Id.* Once again, applying these general principles to "failure to warn" claims, the fact that governmental specifications or regulations did not specifically preclude the exact warning desired by the plaintiff does not take a "failure to warn" claim outside the scope of the government contractor defense so long as the government was involved generally as to the issue of product warnings (or specifically approved the warnings provided by the contractor) and was generally aware of the hazard in question. *Id.* at 438. Stated another way, "[i]nadequacy [of a warning] is not an issue when it is the government's warning in the first place." *Id.*

18. The present case is substantially similar, if not identical, to *Kerstetter* and *Hagen*. As explained by J. Thomas Schroppe, Foster Wheeler's manufacture of economizers and associated equipment for the Navy was subject to close supervision, control, and inspection by the Navy personnel:

> 5. The Navy was responsible for all phases of the design of a vessel, which was accomplished by the Naval architect. Specifically, the Naval architect would prepare the ship design which involved the entire vessel, including the machinery space, and all performance requirements. In general, the ship design for any given class of ship would be contained in a Ship Specification ("Ship Spec") which covers all aspects of the vessel including the machinery space. As it relates to the boiler, the Ship Spec would cover all boiler operating criteria, performance requirements, and maximum physical dimension of the boiler(s). In general, the Ship Spec was written and prepared by the naval architect and approved by the Navy and, in the course of its projects with the Navy, Foster Wheeler was required to design, fabricate and furnish equipment which complied strictly with the requirements in the Ship Spec.
>
> 6. In addition to the Ship Spec, Foster Wheeler was also obligated to comply with Military Specifications ("Mil Specs") which cover all specific components of the boiler, including accessories, subcomponents, and materials required to fabricate the boilers and its components.
>
> . . . .
>
> 21. In addition to the above design, manufacture and testing there remains an obligation by Foster Wheeler to provide technical manuals for the boilers and economizers furnished in a given Navy contract. The Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers such as engineering drawings, test reports and other technical data that could be used as needed by shipboard engineering officer during the life of the equipment. The Navy required that every piece of equipment be supplied with a defined number of copies of one or more technical manuals. Navy personnel participated intimately in the preparation of this kind of information and exercised specific direction and control over its contents. These manuals included safety information related to the operation of naval boilers and economizers only to the extent directed by the Navy.
>
> 22. Furthermore, the Navy had precise specifications, practices and procedures that governed the content of any communication affixed to machinery supplied by Foster Wheeler to the Navy. Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy.

*See* Ex. C at ¶¶ 5-22.

19. There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any machinery on a Navy ship known by Foster Wheeler that was not known to the United States and the Navy.

20. Nowhere is it required that a Defendant produce physical contracts to prove the government's extensive direction and control over product specifications to satisfy the requirements of § 1442(a)(1). To promote judicial efficiency and consistency, the central purpose behind MDL-875, this Court should defer to the decision made by the MDL court in *Hagen* and uphold removal.

21. A properly removed case cannot be remanded for discretionary or policy reasons such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976). The federal officer removal statute is not narrow or limited, and it should not be frustrated by a narrow or grudging interpretation of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 405 (1960); *see also Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("right of removal is absolute for conduct performed under color of federal office"); *Kolibash v. Comm. on Legal Ethics*, 872 F.2d 571, 576 (4th Cir.1989) ("right of removal conferred by § 1442(a)(1) is to be broadly construed."). The removing defendant "need not win his case before he can have it removed" nor even establish that the defense is "clearly sustainable". *See Ripley*, 841 F.3d at 210 (citing *Willingham*, 395 U.S. at 407).

22. Foster Wheeler is not required to notify and obtain the consent of any other defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *See Torres v. CBS News*, 854 F.Supp. 245 (S.D.N.Y. 1994)

23. As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process and pleadings served upon defendant are being filed with this Notice of Removal.

WHEREFORE, Defendant Foster Wheeler Energy Corporation removes this action pursuant to 28 U.S.C. §1442(a) and in conformance with the requirements set forth in 28 U.S.C. § 1446.

Dated: Houston, Texas

Trey B.G. Sandoval III, Esq.
**MEHAFFY WEBER PC**
500 Dallas, Suite 2800
Houston, Texas 77002
(713) 655-1200
TreySandoval@mehaffyweber.com
*Counsel for Defendant*
*Foster Wheeler Energy Corporation*

**CERTIFICATE OF SERVICE**

I, Trey B.G. Sandoval III, hereby certify that on April 24, 2025, Defendant Foster Wheeler Energy Corporation's Notice of Removal with exhibits; Notice of Notice of Removal to State Court; and Notice of Notice of Removal to Adversary were served on Counsel for the Plaintiffs at:

Ryan C. Runkle, Esq.
**HOTZE RUNKLE, PLLC**
1101 South Capital of Texas Highway
Building C, Suite 100
West Lake Hills, Texas 78746

and All Known Defense Counsel via email and/or regular mail.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: Houston, Texas
April 24, 2025



Trey B.G. Sandoval III, Esq.