UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONNIE SUE KOOG, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION 4:25-CV-01879 |
| | § | ADMIRALTY CASE |
| A.W. Chesterton Company, et al. | § | Judge Keith P. Ellison |
| | § | |
| *Defendants.* | § | **JURY TRIAL REQUESTED** |

# PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff and with Leave of this Court files a Second Amended Complaint adding and amending certain Defendants. No additional counts, allegations or claims have been added or modified. No counts, allegations or claims have been deleted or dismissed. Certain Defendants have been Dismissed and are notated as such. All paragraphs that have been added are designated as "2nd AC Para. #". The Defendant number designations have been continued from the last numbered defendant of the First Amended Complaint and will begin with "Def. 59".

## I.

## INTRODUCTION

1. Plaintiff, Connie Sue Koog ("Plaintiff" or "Mrs. Koog"), brings this civil action for the injury and wrongful death of her husband Arthur R. Koog ("Mr. Koog" or "Decedent") from mesothelioma, an incurable fatal cancer caused by asbestos. Plaintiff brings this lawsuit in her individual capacity and as the court-appointed Personal Representative of the Estate of Arthur R. Koog as well as on behalf of his heirs and wrongful death beneficiaries

pursuant to Texas Practice & Remedies Code §76.004(c) for compensatory and punitive damages in accordance with general maritime law.

2. This civil action was originally filed in the 11th District Court of Harris County, Texas on January 30, 2025 and transferred to the Texas Asbestos MDL with Cause No. 2025-06703 ("State Court Filing"). This civil action was removed to this Federal District Court, the Southern District of Texas, Houston Division, on April 24, 2025 by defendant Foster Wheeler Energy Corporation ("Foster Wheeler").

2nd AC Para. 1. Plaintiff filed her First Amended Complaint on July 8, 2025.

II.

**PARTIES**

3. Plaintiff, Connie Sue Koog, is an individual that is a citizen of the State of Texas.

4. The Defendants complained of and named below are derived from: 1) the Premises (alternatively called "work sites") upon which Mr. Koog worked, 2) the Contractors known to have conducted work with asbestos on the Premises where Mr. Koog worked, 3) the boiler manufacturers of asbestos-containing boilers listed on either the Texas Boiler Registry[1] or the California Pressure Vessel Registry[2], at the Premises that Mr. Koog worked, 4) the product manufacturers known to have supplied asbestos products to the Premises that Mr. Koog worked, or 5) references made by Mr. Koog to asbestos-containing products or equipment in records maintained by the National Archives Personnel Records Center. The records maintained by the National Archives Personnel

[1] The Texas Boiler Registry is maintained by the Texas Department of Licensing and Regulation.
[2] The California Pressure Vessel Registry is maintained by the California Department of Industrial Relations.

Records Center have been attached to the First Amended Complaint as Exhibit 1. See ECF Doc 62. Within Exhibit 1 are Naval and Civil Service job applications where Mr. Koog was asked to expound upon his work experience and qualifications. These records have been independently maintained by the National Archives Personnel Records Center and are preserved testimony, in some instances handwritten, of the exposures to asbestos that Mr. Koog experienced.

5. In compliance with Federal Rules of Civil Procedure 3, 5, 7, 7.1, 8, 10, 17 and 19, as well as the Southern District of Texas Local Rule 5.3, a summary of each party's role and status has been included. A designation of known citizenship has been included for diversity jurisdiction determination. Finally, if necessary, a discussion of defendant's capacity to be sued is included.

6. Plaintiff complains of the following Defendants, hereinafter referred to as "Product Defendants":

Def 1. **A.W. CHESTERTON COMPANY** has been served with process and has answered the State Court Filing. This defendant has not made an appearance in this cause at present. This defendant was a known supplier of asbestos products to the US Navy and various work sites of the Decedent. This defendant is a citizen of Massachusetts.

Def 2. **LAMONS GASKET COMPANY N/K/A BOOST HOLDCO COMPANY** has been served with process, answered in the State Court Filing and has made an appearance in this cause. This defendant was a known supplier of asbestos products to various work sites of the Decedent. This defendant is a citizen of Delaware.

Def 3. **RESCO HOLDINGS, L.L.C.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. This defendant was a known supplier of asbestos products to the US Navy, Naval Civil Service and various work sites of the Decedent. This defendant is also a successor to Pullman Inc. and M.W. Kellogg which were known contractors that worked with asbestos at various work sites of the Decedent. This defendant is a citizen of Delaware.

Def 4. **TRIPLEX, INC.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. This defendant was a known supplier of asbestos products to the Naval Civil Service and various work sites of the Decedent. This defendant is a citizen of Texas.

7. Defendant **RESCO HOLDINGS, LLC**, hereinafter may also be referred to as a "Contractor Defendant."

8. Plaintiff further complains of the following Defendants, hereinafter referred to as "Equipment Defendants":

2nd AC Para. Def 59. **TDY INDUSTRIES, INC., A/K/A ALLEGHENY TDY, INDIVIDUALLY AND AS SUCESSOR IN INTEREST TO GRAY MARINE MOTOR CO.** is a corporation organized and existing under and by virtue of the laws of the State of Delaware. Counsel for Allegheny TDY has agreed to waive service in this cause. The Waiver of Service will be filed following the filing of this complaint and its receipt by defendant's counsel. Decedent identified defendant's asbestos-containing products on pages 178 and 187 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Delaware.

2nd AC Para. Def 60. **ALLIS CHALMERS CORPORATION PRODUCT LIABILITY TRUST** is an entity believed to be organized and existing under and by virtue of the laws of the State of Wisconsin. Defendant and its predecessor, Allis Chalmers Corporation, have at all times relevant to this litigation conducted business in the State of Texas but no longer maintain a registered agent for service of process in this State. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving the Secretary of State of the State of Texas who shall then forward a copy to: Allis Chalmers Corporation Product Liability Trust, 4806 Batz Road, Waunakee, WI 53597. An alternative address for this defendant appears to be Allis Chalmers Corporation Product Liability Trust, 3500 Corbean Ct, Madison, WI 53704. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving the Secretary of State of the State of Texas who shall then forward a copy to: Allis Chalmers Corporation Product Liability Trust, 3500 Corbean Ct, Madison, WI 53704. This defendant is believed to be a citizen of Wisconsin.

Def 5. **ARMSTRONG INTERNATIONAL, INC.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 27 and 89 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Michigan.

Def 6. **ATLAS COPCO NORTH AMERICA, INC**. has been served with process and answered in this cause. Decedent identified this defendant's asbestos-containing product on

pages 26 and 88 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is believed to be a citizen of Delaware.

Def 7. **ABB INC.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 26, 27, 78, 88, 89 and 129 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This Defendant is also liable for the Reliance Electric Pumps identified on Exhibit 1 to this Second Amended Complaint. This defendant is a citizen of Delaware.

Def 8. **PARAMOUNT GLOBAL, F/K/A/ VIACOMCBS INC., F/K/A CBS CORPORATION, A DELAWARE CORPORATION, F/K/A VIACOM INC., SUCCESSOR BY MERGER TO CBS CORPORATION, A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORPORATION** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 22, 25, 26, 27, 36, 78, 88, 89, 129, 131, 182 and 183 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant also has liabilities for the asbestos-containing turbine on the *USS Neches*. This defendant is believed to be a citizen of Delaware.

Def 9. **CLEAVER-BROOKS, INC.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. This defendant has liabilities for the asbestos-containing boilers identified on the Texas Boiler Registry as Texas Boiler #96169 with the Serial #L-61847, Texas Boiler #103813 with the Serial #L-63433, and

for the asbestos-containing boiler identified on the California Boiler Registry as California Boiler #B021862-63 with the Board #21582.

2nd AC Para. Def 61. **CLOW CORPORATION AS SUCCESSOR TO CHICAGO PUMPS COMPANY** is an entity organized and existing under and by virtue of the laws of the State of Delaware. This defendant had a registered agent with Texas that is no longer active. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving the Secretary of State of the State of Texas who shall then forward a copy to: Clow Corporation, 902 South 2nd St., Oskaloosa, IA 52577. Defendant is identified on Exhibit 1 to this Second Amended Complaint. This defendant is a citizen of Delaware.

Def 10. **CRANE CO.** has been Dismissed.

Def 11. **REDCO CORPORATION, AS SUCCESSOR IN INTEREST TO CRANE CO.** has been served with process and has answered in this cause. Decedent identified this defendant's asbestos-containing products on pages 26, 27, 88 and 89 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Connecticut.

2nd AC Para. Def 62. **EATON CORPORATION AS SUCCESSOR IN INTEREST TO YALE & TOWNE MFG CO.** is an entity organized and existing under and by virtue of the laws of the State of Ohio, with an agent for service in the State of Texas. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving their registered agent, to wit: CT Corp System, 1999 Bryan St.,

Ste. 900, Dallas, TX 75201. Defendant is identified on Exhibit 1 to this Second Amended Complaint. This defendant is a citizen of Ohio.

Def 12. **EMERSON ELECTRIC CO.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 22, 26, 29, 88, and 91 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Missouri.

2nd AC Para. Def 63. **CROSBY VALVE, LLC** is an entity organized and existing under and by virtue of the laws of the State of Massachusetts. Counsel for Crosby Valve, LLC has agreed to waive service in this cause. The Waiver of Service will be filed following the filing of this complaint and its receipt by defendant's counsel. Decedent identified this defendant's asbestos-containing products on pages 22, 26, 29, 88, and 91 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is believed to be a citizen of Massachusetts.

Def 13. **IMO INDUSTRIES LLC** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 24, 25, 26 and 87 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant also has liabilities for the two (2) DeLaval asbestos-containing steam turbines on the *USS General W.A. Mann*. This defendant is a citizen of Delaware.

Def 14. **FOSTER WHEELER ENERGY CORPORATION** has been served with process, answered in the State Court Filing and then subsequently removed the current action

to this Court and, as such, has made an appearance in the establishment of this cause. Decedent identified one of this defendant's asbestos-containing products on pages 26 and 88 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. Additionally, Foster Wheeler "has confirmed that it manufactured boilers and associated equipment onboard the *USS W.A. Mann*". *See* ECF Doc-1 at pg 6. Specifically, Foster Wheeler manufactured four (4) "D"-type boilers, operated at 465 psi at 765° on the *USS General W.A. Mann*. This defendant is a citizen of New York that is a wholly-owned subsidiary of John Wood Group PLC which is a citizen of Scotland, United Kingdom.

Def 15. **GENERAL ELECTRIC COMPANY OPERATING AS GE AEROSPACE** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 22, 25, 26, 27, 78, 79, 87, 88, 89 and 129 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant also has liabilities for the asbestos-containing steam turbine on the *USS Calvert*. This defendant is a citizen of New York.

2nd AC Para. Def 64. **GRAHAM CORPORATION A/K/A GHM** is believed to be an entity organized and existing under and by virtue of the laws of the State of Delaware. This defendant is listed with The Texas State Comptroller as having an active right to transact business in Texas; but, has not registered an agent with the Secretary of State. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving the Secretary of State of the State of Texas who shall then forward a copy to: Graham Corporation, 20 Florence Ave.,

Batavia, NY 14020-3318. Defendant is identified on Exhibit 1 to this Second Amended Complaint. This defendant is a citizen of Delaware.

Def 16. **GRAY MARINE DIESEL ENGINES D/B/A CONTINENTAL MOTORS** has been served with process as evidenced by a Return of Service by a Process Server, to wit: Domingue Aubrey. The process server served the registered agent, Aleksandra Majer, who is the current registered agent with the State of Texas, with the most recent effective Secretary of State Registration date as 1/22/2024. This defendant has not answered in either the State Court Filing or this cause. No counsel for this defendant has had any contact with Plaintiff's counsel. Defendant was served with the First Amended Complaint, pursuant to Federal Rule of Procedure Rule 5, on July 23, 2025. Plaintiff Requested an Entry of Default on August 15, 2025. See ECF Doc-109. Decedent identified this defendant's asbestos-containing products on pages 178 and 187 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is believed to be a citizen of Texas, based upon filings with the Texas Secretary of State.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to the registered agent, to wit: Aleksandra Majer, at the address registered with the Secretary of State of the State of Texas as the Office Street Address, to wit: 11533 Main St., Houston, TX 77025.

Def 17. **GRAY MARINE MOTOR CO.** has been Dismissed.

Def 18. **MCWANE, INC. AS SUCESSOR IN INTEREST TO MANCHESTER BOILERS AND AS SUCCESSOR TO CLOW CORPORATION AND AS SUCESSOR IN INTEREST TO CHICAGO PUMP COMPANY** has been served with process, answered in the State Court Filing and

has made an appearance in this cause. This defendant has liabilities for the asbestos-containing boilers identified on the California Boiler Registry as California Boiler #A043852-10 with the Board #234152, California Boiler #A034162-91 with the Board #56871, California Boiler #A043854-10 with the Board #845150, California Boiler #A043853-10 with the Board #204957, and California Boiler #A008067-16 with the Board #31784. Defendant is identified on Exhibit 1 to this Second Amended Complaint. This defendant is a citizen of Delaware.

Def 19. **LUNKENHEIMER VALVE COMPANY D/B/A CUMMINS INC.** has been Dismissed.

Def 20. **CUMMINS INC.** has been served with process and has answered in this cause. This Defendant is liable for the Diesel Engine and Generator as listed on Exhibit 1 to the Second Amended Complaint. This defendant is a citizen of Indiana.

Def 21. **FMC CORPORATION** has been served and has answered in this cause. Decedent identified this defendant's asbestos-containing products on pages 24 and 86 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Delaware.

Def 22. **GRUNDFOS PUMPS CORPORATION AS SUCCESSOR TO PEERLESS PUMP CO.** has been Dismissed.

2nd AC Para. Def 65. **GRUNDFOS AMERICAS CORPORATION AS SUCESSOR IN INTEREST TO PEERLESS PUMPS AND AS SUCESSOR IN INTEREST TO CHICAGO PUMP COMPANY** is an entity organized and existing under and by virtue of the laws of the State of California, with an agent for service in the State of Texas. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant

be served by serving their registered agent, to wit: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201. Decedent identified this defendant's asbestos-containing products on pages 24 and 86 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. Defendant is identified on Exhibit 1 to this Second Amended Complaint. This defendant is a citizen of California.

2nd AC Para. Def 66 **ITT LLC AS SUCESSOR IN INTEREST TO KENNEDY VALVE MANUFACTURING CO.** is an entity organized and existing under and by virtue of the laws of the State of New York. ITT LLC has at all times relevant to this litigation conducted business in the State of Texas; however, all three ITT Corporation entities ever registered with Texas are now in an inactive status; but, with one identifying a mailing address "for Serving SOS Mail". Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving the Secretary of State of the State of Texas who shall then forward a copy to: ITT Corporation, 320 Park Ave., New York, NY 10022. Decedent identified this defendant's asbestos-containing products on pages 26 and 88 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of New York.

Def 23. **RHEEM MANUFACTURING COMPANY** has been served with process, answered in the State Court Filing and has filed an amended answer in this cause. This defendant has liabilities for the asbestos-containing boiler identified on the Texas Boiler Registry as Texas Boiler #142090 with the Serial #43098. This defendant is a citizen of Delaware.

Def 24. **RILEY POWER INC., F/K/A BABCOCK BORSIG POWER INC., F/K/A RILEY STOKER CORPORATION** has been served with process, answered in the State Court Filing and has made an appearance in this cause. This defendant has liabilities for the asbestos-containing boilers identified on the Texas Boiler Registry as Texas Boiler #31498 with the National Board #002027, Texas Boiler #443314 with the National Board #020396, Texas Boiler #43313 with the National Board #020395, Texas Boiler #43315 with the National Board #020397, Texas Boiler #43312 with the National Board #020394 and Texas Boiler #44122 with the National Board #021327. This defendant is a citizen of Massachusetts.

2nd AC Para. Def 67. **STERLING FLUID SYSTEMS (USA) INC.** is an entity organized and existing under and by virtue of the laws of the State of Delaware, with an agent for service in the State of Texas. Therefore, it is hereby requested that a Summons be issued by the Clerk of this Court and that this defendant be served by serving their registered agent, to wit: CT Corp System, 1999 Bryan St., Ste 900, Dallas, TX 757201. Decedent identified this defendant's asbestos-containing products on pages 24 and 86 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a believed to be a citizen of Delaware.

Def 25. **TECHNOTHERM CORPORATION** has been served in this matter. This defendant has not answered. This defendant has liabilities for an asbestos-containing boiler on the Texas Boiler Registry as Texas Boiler #116914 with the Serial # 802081. This defendant is a resident of Oklahoma.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to known counsel for this defendant.

Def 26. **UNION BOILER WORKS, INC.** has been served with process as evidenced by a Return of Service by both a State of Texas Process Server, to wit: Gregory Garcia, and the Texas Secretary of State. The Secretary of State for the State of Texas issued a Certificate of Service for this defendant on May 9, 2025. Service of the First Amended Complaint was attempted upon this defendant, pursuant to Federal Rule of Procedure Rule 5, by certified mail, return receipt requested on July 18, 2025. On August 5, 2025 the return receipt was received as "unclaimed". Plaintiff Requested an Entry of Default on August 15, 2025. See ECF Doc-110. This defendant has not answered in either the State Court Filing or this cause. No counsel for this defendant has had any contact with Plaintiff's counsel. This defendant has liabilities for the asbestos-containing boiler identified on the Texas Boiler Registry as Texas Boiler #51962 with the Serial #HE1790. This defendant is believed to be a citizen of Pennsylvania.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to the address served by the Secretary of State for the State of Texas, to wit: 716 North Front Street, Philadelphia, PA 19123. This is also the address registered with the Commonwealth of Pennsylvania Department of State and showing to be active.

Def 27. **BURNHAM, LLC** has been served with process and answered in the State Court Filing. This defendant has made an appearance and answered in this cause. This defendant has liabilities for the asbestos-containing boiler identified on the Texas

Boiler Registry as Texas Boiler #154819 with the National Board #015407. This defendant is believed to be a citizen of Pennsylvania.

Def 28. **FLOWSERVE US, INC. AS SUCCESSOR TO VOGT VALVES, INC**. has been served with process and answered in this cause. Decedent identified this defendant's asbestos-containing products on pages 26 and 88 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Texas.

Def 29. **MESTEK, INC.** has been served with process and answered in the State Court Filing. This defendant has made an appearance and answered in this cause. Decedent identified this defendant's asbestos-containing products on pages 28 and 90 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Massachusetts.

Def 30. **CELEROS FLOW TECHNOLOGY, LLC AS SUCCESSOR IN INTEREST TO COPES-VULCAN, INC.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on pages 28, 90 and 181 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of Delaware.

Def 31. **CLYDE INDUSTRIES, INC. AS SUCCESSOR IN INTEREST TO COPES-VULCAN, INC.** has been Dismissed.

Def 32. **CANVAS MW, LLC F/K/A THE MARLEY WYLAIN COMPANY LLC** has been served with process, answered in the State Court Filing and has made an appearance in this cause. This defendant has liabilities for the asbestos-containing boiler identified on the

Texas Boiler Registry as Texas Boiler #115763 with the Serial #G10. This defendant is believed to be a citizen of West Virginia.

Def 33. **WILSON HANLEY, INC. F/K/A THOMAS C. WILSON LLC** has been served with process. Counsel for Wilson Hanley, Inc. has agreed to waive service in this cause. The Waiver of Service will be filed following the filing of this complaint and its receipt by defendant's counsel. Decedent identified this defendant's asbestos-containing products on pages 13, 29, 36 and 91 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This defendant is a citizen of New York.

Def 34. **FLOWSERVE CORPORATION, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO PEERLESS PUMPS AND AS SUCCESSOR TO STERLING FLUID SYSTEMS AND AS SUCCESSOR IN INTEREST TO CHICAGO PUMP COMPANY** has been served with process as evidenced by a Return of Service by a State of Texas Process Server, to wit: Raymond Mensah. This defendant has not answered in either the State Court Filing or this cause. Defendant was served with the First Amended Complaint, pursuant to Federal Rule of Procedure Rule 5, on July 23, 2025. Decedent identified this defendant's asbestos-containing products on pages 24 and 86 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. This Defendant is also liable for the Chicago Pumps as listed on Exhibit 1 to the Second Amended Complaint. This defendant is believed to be a citizen of New York.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to known counsel for this defendant.

Def 35. **JOHN ZINK COMPANY, LLC** has been served with process and has answered in this cause. This defendant has liabilities for the asbestos-containing boiler identified on the Texas Boiler Registry as Texas Boiler #116920 with the Serial #X55838A. This defendant is a citizen of Delaware.

Def 36. **ZURN INDUSTRIES, LLC F/K/A ZURN INDUSTRIES, INC.** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent identified this defendant's asbestos-containing products on page 181 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. In addition to the three (3) boilers at Port Hueneme, this defendant has liabilities for the asbestos-containing boilers identified on the Texas Boiler Registry as Boiler #116878 with the Serial #100052, Texas Boiler #116877 with the Serial #100051, Texas Boiler #116912 with the Serial #100082, Texas Boiler #116880 with the Serial #100054, Texas Boiler #116879 with the Serial #100053 and Texas Boiler #116911 with the Serial #10019. This defendant is a citizen of Texas.

9. Plaintiff further complains of the following additional Defendants, hereinafter referred to as "Premises Defendants":

Def 37. **EXXON MOBIL CORPORATION** has been served with process, answered in the State Court Filing and has made an appearance in this cause. Decedent was an employee of this defendant and worked with asbestos-containing products, supplied by this defendant and other contractors, on this defendant's premises. Decedent also worked at this defendant's premises with asbestos-containing products supplied by

this defendant as a contractor. *See* Exhibit 2 to ECF Doc-62. This defendant is a citizen of New Jersey.

Def 38. **HOECHST CELANESE CHEMICAL, INC., INDIVIDUALLY AND F/K/A CELANESE CHEMICAL COMPANY, INC. AND HOECHST CELANESE CHEMICAL GROUP** has been Dismissed.

Def 39. **CNA HOLDINGS, LLC** has been served with process and has answered in this cause. Decedent worked with asbestos-containing products, supplied by this defendant and other contractor defendants, as a contractor at this defendant's premises for Arthur Brothers, S&B Constructors, MMC Contractors, Quality Enterprises, DEW Inc. and E&M Contractors. *See* Exhibit 2 to ECF Doc-62. This defendant is a citizen of Delaware.

Def 40. **SHELL USA INC.** has been served with process and has answered in this cause. Decedent details his work, which by necessity would involve work with asbestos-containing products supplied by this defendant, at the defendant's premises on pages 15, 16, 82, 127 and 146 of Exhibit 1 of the First Amended Complaint. See ECF Doc 62. Decedent was an employee of this defendant and worked with asbestos-containing products, supplied by this defendant and other contractors, on this defendant's premises. *See* Exhibit 2 to ECF Doc-62. This defendant is a citizen of Delaware.

10. Defendants **EXXON MOBIL CORPORATION** and **SHELL OIL COMPANY** are hereinafter also referred to as "Employer Defendants."

11. Plaintiff further complains of the following additional Defendants, hereinafter referred to as "Contractor Defendants":

Def 41. **ARTHUR BROTHERS, INCORPORATED** has been served with process as evidenced by a Return of Service by a State of Texas Process Server, to wit: Jennifer Simmons. This defendant was served with the First Amended Complaint, pursuant to Federal Rule of Procedure Rule 5 on July 28, 2025. This defendant has not answered in either the State Court Filing or this cause. Plaintiff's counsel has been in contact with the former President and Director of this defendant. Decedent was an employee of this defendant and worked with asbestos-containing products supplied by this defendant, by the owner of the premises and by other contractors working on those premises. *See* Exhibit 2 to ECF Doc-62. This defendant was a contractor at the Hoechst Celanese Bishop Plant, the Exxon Kingsville Plant and at the NAS Kingsville where Decedent worked, separate and apart from this defendant, around this defendant's employees while they used asbestos-containing products. This defendant is a citizen of Texas.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to the Defendant's representatives.

Def 42. **BELMONT CONSTRUCTORS COMPANY, INC. AS SUCCESSOR TO ARTHUR BROTHERS, INCORPORATED** has been served with process on July 22, 2025 as evidenced by a Return of Service by a State of Texas Process Server, to wit: Briana Pearson. This defendant has not answered the Summons. No counsel for this defendant has had any contact with Plaintiff's Counsel. Decedent was an employee of a company, **ARTHUR BROTHERS, INCORPORATED**, that this defendant is believed to have acquired and Decedent worked with asbestos-containing products supplied by **ARTHUR BROTHERS, INCORPORATED**, by the owner of the premises and by other

contractors working on those premises. This defendant's presumed predecessor, **ARTHUR BROTHERS, INCORPORATED,** was a contractor at the Hoechst Celanese Bishop Plant, the Exxon Kingsville Plant and at the NAS Kingsville where Decedent worked, separate and apart from **ARTHUR BROTHERS, INCORPORATED**, around **ARTHUR BROTHERS, INCORPORATED'S** employees while they used asbestos-containing products. This defendant is believed to be a citizen of Delaware.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to the Defendant's registered agent, to wit: CT Corp System, 1021 Main Street, Suite 1150, Houston, TX 77002.

Def 43. **BELMONT CONSTRUCTORS INC. AS SUCCESSOR TO ARTHUR BROTHERS, INCORPORATED** is a Delaware corporation that had a principal place of business in Bellaire, TX; but, is listed as having an inactive status with the Secretary of State of the State of Texas and no longer maintains a registered agent with the State of Texas. Therefore, the Summons issued by the Clerk of this Court was served upon the Secretary of State of the State of Texas on July 23, 2025, pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041-045, as evidenced by the proof of service executed by Ryan Schedler. The Secretary of State issued a Certificate of Service on September 9, 2025. This defendant has not answered the Summons. No counsel for this defendant has had any contact with Plaintiff's Counsel. Decedent was an employee of a company, **ARTHUR BROTHERS, INCORPORATED**, that this defendant is believed to have acquired and Decedent worked with asbestos-containing products supplied by **ARTHUR BROTHERS, INCORPORATED**, by the owner of the premises and

by other contractors working on those premises. This defendant's presumed predecessor, **ARTHUR BROTHERS, INCORPORATED,** was a contractor at the Hoechst Celanese Bishop Plant, the Exxon Kingsville Plant and at the NAS Kingsville where Decedent worked, separate and apart from **ARTHUR BROTHERS, INCORPORATED**, around **ARTHUR BROTHERS, INCORPORATED'S** employees while they used asbestos-containing products. This defendant is believed to be a citizen of Delaware.

Plaintiff will re-serve the Summons and will serve this Second Amended Complaint to the Secretary of State of the State of Texas who, pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041-045, will forward to Defendant's address, to wit: The HALCON SD Group, Inc., 2 Park Ave., New York, NY 10016.

Def 44. **BERRY GP, INC**. has been served with process, answered in the State Court Filing, made an appearance and answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Texas.

Def 45. **4520 CORP., INC., AS SUCCESSOR IN INTEREST TO BENJAMIN F. SHAW COMPANY,** has been served with process and has answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Delaware.

Def 46. **SANTA FE BRAUN, INC.** has been served with process and has answered the State Court Filing. This defendant has made an appearance in this cause. Decedent worked

with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is believed to be a citizen of Delaware.

Def 47. **FLUOR CORPORATION (DELAWARE)** has been served with process, has answered in the State Court Filing, made an appearance and answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Delaware.

Def 48. **FLUOR ENTERPRISES, INC.** has been served with process, has answered in the State Court Filing, made an appearance and answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Delaware.

This defendant denies being the successor to Daniel International Corporation. Plaintiff contends that **FLUOR ENTERPRISES, INC.** is the defendant with the capacity to be sued for the liabilities of Daniel International Corporation. Accordingly, in 1977 Fluor acquired Daniel International Corporation as a subsidiary and in 1986 Fluor merged with its then subsidiary, Daniels International Corporation, to form Fluor Daniels and as such acquired all assets and liabilities of Daniel International Corporation. According to a search of the SEC EDGAR database archives, there is a filing by Fluor with an exhibit 21.1 listing Daniel International Corporation as a subsidiary of **FLUOR ENTERPRISES, INC**., which in

turn is listed as a subsidiary of **FLUOR CORPORATION**. Plaintiff acknowledges there is no date or timeframe associated with that data from the SEC EDGAR database archives. Plaintiff is unaware of subsequent reorganizations that divested these liabilities for asbestos and must presume liabilities for Daniel International Corporation are still held by this defendant.

Def 49. **DANIEL INTERNATIONAL CORPORATION** (California) has at all times relevant to this litigation conducted business in the State of Texas, but no longer maintains a registered agent for service of process in this State. Therefore, the Summons issued by the Clerk of this Court was served upon the Secretary of State of the State of Texas on July 23, 2025, pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041-045, as evidenced by the proof of service executed by Ryan Schedler. The Secretary of State issued a Certificate of Service on August 27, 2025. Defendant has not answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is believed to be a citizen of California.

Def 50. **DANIEL INTERNATIONAL CORPORATION** (South Carolina) has at all times relevant to this litigation conducted business in the State of Texas, but no longer maintains a registered agent for service of process in this State. Therefore, the Summons issued by the Clerk of this Court was served upon the Secretary of State of the State of Texas on July 23, 2025, pursuant to the Texas Long-Arm Statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041-045, as evidenced by the proof of service executed by Ryan Schedler. The

Secretary of State issued a Certificate of Service on September 3, 2025. Defendant has not answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of South Carolina.

Def 51. **FLUOR CORPORATION** (California) has been Dismissed.

Def 52. **BEXAR CANYON MANAGEMENT, INC. F/K/A H.B. ZACHRY COMPANY** has been served with process, has answered in the State Court Filing and has made an appearance in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Delaware.

Def 53. **MUNDY SERVICE CORPORATION D/B/A THE MUNDY COMPANIES, INDIVIDUALLY AND AS SUCCESSOR TO MUNDY CONSTRUCTION COMPANY AND AS SUCCESSOR TO MUNDY INDUSTRIAL MAINTENANCE, INC. AND AS SUCCESSOR IN INTEREST TO SAN JACINTO MAINTENANCE, INC. AND AS SUCCESSOR IN INTEREST TO TRIANGLE MAINTENANCE** has been served with process and has answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Texas.

Def 54. **NATKIN & COMPANY** has been served with process as evidenced by a Return of Service by a State of Texas Process Server, to wit: Sydney Tarleton. This defendant has not answered in either the State Court Filing or this cause. Plaintiff's counsel has had communications with this defendant's counsel. Decedent worked with and around

employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Missouri.

Plaintiff will send a certified-mail (return receipt requested) copy of this Second Amended Complaint to known counsel for this defendant.

Def 55. **PARSONS GOVERNMENT SERVICES, INC. F/K/A PARSONS INFRASTRUCTURE & TECHNOLOGY GROUP, INC.** has been served with process, has answered in the State Court Filing and has made an appearance in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Nevada.

Def 56. **PARSONS ENERGY & CHEMICALS GROUP INC.** has been served with process, has answered in the State Court Filing and has made an appearance in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is a citizen of Texas.

Def 57. **REF-CHEM L.P., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO RC-AEL COMPANY AND INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO DON LOVE, INC.** has been served with process and has answered in this cause. Decedent worked with and around employees of this defendant while they installed and removed asbestos-containing products at various premises where Decedent worked. This defendant is believed to be a citizen of Texas.

12. Defendant **ARTHUR BROTHERS, INCORPORATED,** (and to the extent that **BELMONT CONSTRUCTORS COMPANY, INC.** and **BELMONT CONSTRUCTORS INC.** are successors) is hereinafter also referred to as an "Employer Defendant."

13. Plaintiff further complaints of an additional defendant:

Def 58. **METROPOLITAN LIFE INSURANCE COMPANY** has been served with process, has answered in the State Court Filing and has made an appearance in this cause. Decedent and Plaintiff have been tortuously injured as a result of the conspiracy to which this defendant was a party as discussed below. This defendant is a citizen of New York.

**III.**

**JURISDICTION**

14. This Court has personal jurisdiction over this cause of action because Defendants are duly licensed to do business in the State of Texas and/or at all material times are or have been engaged in business in the State of Texas.

15. This Court has subject matter jurisdiction over this cause of action as one of the matters in controversy involves a Federal Question, specifically a Federal Defense, as elaborated upon in defendant Foster Wheeler's Notice of Removal, *See* ECF Doc-1.

16. Further, this Court has diversity jurisdiction over the parties to this cause of action, pursuant to 28 U.S.C §1332(a)(1), because the Plaintiff is a citizen of Texas and at least 46 Defendants are not citizens of Texas. The amount in controversy exceeds the

jurisdictional limit of Seventy-Five Thousand Dollars ($75,000.00), excluding interests and cost.

17. Finally, this Court has subject matter jurisdiction over this cause of action because the United States Constitution grants federal courts jurisdiction over "all Cases of admiralty or maritime jurisdiction", See U.S. Const. art. III. §2, cl. 1. Plaintiff claims herein satisfy both the locality test and the connection test. See *Abbay v. Armstrong Int'l, Inc.*, No. 875, 2012 U.S. Dist. LEXIS 29422 (E.D. Pa. Feb. 28, 2012); *Parfait v. Swiftships, LLC*, 747 F. Supp. 3d 931 (E.D. La. 2024); *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, (1995); *Venable v. La. Worker's Comp. Corp.*, 740 F.3d 937 (5th Cir. 2013). When admiralty jurisdiction of a claim exists, maritime law rather than state law will govern. *See Ziegler v. Subalipack (M) SDN BHD*, 2017 U.S. Dist. LEXIS 95210, (S.D. Tex. 2017).

18. This Court has original exclusive jurisdiction over any civil maritime claims as present in this action pursuant to 28 U.S.C. § 1333(1). Further, this Court also has supplemental jurisdiction over all other claims asserted herein against Product, Contractor, Equipment, Premises, Employer Defendants and **METROPOLITAN LIFE INSURANCE COMPANY** because those claims are so related to the maritime claims within the Court's original jurisdiction that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367. All claims arise from a common nucleus of operative fact, specifically Mr. Koog's exposure to asbestos-containing products throughout his career in the US Navy, US Civil Service, and private industry, such that Plaintiff would ordinarily be expected to try them all in one judicial proceeding.

19. Furthermore, joinder of all Defendants in this action is proper under FRCP 20(a)(2) because the right to relief asserted against all Defendants arises out of the same transaction, occurrence, or series of transactions or occurrences. As a consequence, Mr. Koog's continuous exposure to asbestos-containing products during his entire working career, both through maritime employment and other employments, will necessitate questions of law and fact common to all Defendants (including, but not limited to, product identification, causation, and the adequacy of warnings), to be resolved contemporaneously and in a singular action.

20. Accordingly, the exercise of both original and supplemental jurisdiction, and the joinder of all named Defendants in a single proceeding, promotes judicial economy, convenience, and fairness.

**IV.**

**VENUE**

21. Pursuant to 28 U.S.C.A §1391(b)(2) venue is proper in this judicial district because a substantial part of the events and omissions occurred in the Southern District of Texas; specifically at: 1) Decedent's work sites: The NAS Kingsville, TX; the Baptist Church in Kingsville, TX; the Baptist Church in Bishop, TX; the Exxon Plant in Kingsville, TX; Kaufer High School in Riviera, TX; Hoechst Celanese Chemical Plant in Bishop, TX (aka Corpus Christi, TX); Christus SPOHN Memorial Hospital in Corpus Christi, TX; and 2) the Corporate offices of: **EXXON MOBIL CORPORATION** in Houston, TX; **SHELL USA, INC.** in Houston, TX; **VOGT VALVES, INC.** in Stafford, TX; **ARTHUR BROTHERS, INCORPORATED** in Kingsville, TX; **TRIPLEX, INC.** in Humble, TX; **BERRY GP, INC.** in Corpus Christi, TX; **THE**

**MUNDY COMPANIES** in Sugar Land, TX; and **PARSONS ENERGY & CHEMICALS GROUP, INC.** in Houston, TX.

## V.

## BACKGROUND

22. During the time period that Mr. Koog was exposed to asbestos, the manufacturers of asbestos products affirmatively chose not to adequately warn of the lethal hazards of breathing asbestos dust, often deciding not to issue any warning at all, despite the fact that these asbestos companies knew that breathing small amounts of asbestos dust could be fatal. When the asbestos dust is breathed in, it can cause asbestos cancers many decades later. The scientific and regulatory communities around the world are in unanimous agreement that all types of asbestos released from asbestos products cause cancer, and that there is no safe level of exposure to asbestos.
23. Mr. Koog's work placed him around asbestos-containing products, including but not necessarily limited to gaskets, packing, asbestos rope, asbestos woven tape, millboards, boilers, valves, pumps, thermal insulation, refractory insulation, steam traps, control drives, regulators, steam turbines, soot blowers, diesel engines and boiler cleaning drives, all of which can release vast amounts of asbestos dust into the air when disturbed.
24. Mr. Koog was exposed to asbestos during his service in the United States Navy. He joined the Navy in 1954 and served until 1964, with a 2-year period during which he worked for the US Civil Service for the U.S. Naval Construction Battalion at Port Hueneme, CA. He was a Naval Fireman, Boiler Tender, Boilerman (3rd, 2nd and 1st Class), and Heat Plant Operator in the Navy. He served at the Naval Operating Base in San Diego during 1954.

He was aboard the *USS Magoffin* from 1954 to 1958. He was assigned to the U.S. Naval Construction Battalion at Port Hueneme, CA, where he was the Heat Plant Operator from 1958 to 1959. He was aboard the *USS Calvert* from 1960 to 1961. He was assigned to the Naval Supply Depot in Seattle, WA, from 1961 to 1962. He was aboard the *USS Neches* during 1962. He was aboard the *USS General W. A. Mann* from 1962 to 1964. He was assigned to the US Navy Hunter's Point Shipyard in San Francisco, CA, (aka Treasure Island) at certain points from 1963 to 1964.

25. Mr. Koog also served in the US Civil Service at Naval Air Stations from 1966 until 1972. He was a Power Plant Controlman, Pipefitter, Boilermaker, and Steam Plant Operator at the Naval Air Stations. He was at the Naval Air Weapons Station China Lake in San Bernardino, CA from 1966 to 1972 and The Naval Air Station in Kingsville, TX during 1972.

26. In between the Navy and Civil Service, Mr. Koog worked civilian jobs. From June of 1964 to June of 1965, he was a plumber for St. Johns Hospital in Oxnard, CA where he maintained, repaired, replaced and installed new piping systems including high and low pressure steam lines. From June of 1965 to June of 1966, he worked as a Roustabout and Pipefitter for Shell Oil Company in Ventura, CA. He made the following statement in his civil service records: "Roustabout classification (sic) covered many types of work as seen below. Ninety percent of the time I performed tasks equivalent to Journeman (sic) pipefitter." *See* Exhibit 1 of the First Amended Complaint. See ECF Doc 62, pg. 15. At Shell Oil, Mr. Koog installed, repaired and maintained high-and-low pressure piping systems, with some of the systems being pressurized to 6,000 psi.

27. After leaving the Civil Service, Mr. Koog worked as a Boilermaker, Pipefitter, Instrument Fitter and Plumber for several contractors, including his own company, A.R. Koog Plumbing Co., and the Exxon Corporation from 1972 until 1986 in the Bishop, TX; Kingsville, TX and Corpus Christi, TX vicinities. *See* Exhibit 2. He had a Master Plumber's License, #7396-Texas, and a Texas Railroad Commission L.P. Gas Plumber's certification. He was a Journeyman Pipefitter and a Journeyman Instrument Fitter. He worked at the Hoechst Celanese Chemical Plant in Bishop, TX; the Exxon Gas Plant (King's Ranch) in Kingsville, TX; the Christus SPOHN Memorial Hospital in Corpus Christi, TX; the Baptist Church in Bishop, TX; the Baptist Church in Kingsville, TX and Kaufer High School in Riviera, TX.

28. Mr. Koog worked at the Hoechst Celanese Chemical Plant for Arthur Brothers Incorporated, S&B Contractors, MMC Contractors, DEW Incorporated and E&M Contractors. He installed new systems and performed maintenance and repairs on the piping systems, heating equipment construction and repair, boiler installation and boiler repair, boiler control repairs, instrument and control repairs, steam and hot water piping system installation and repairs, acid piping and storage tank installation.

29. Mr. Koog worked at the Exxon Gas Plant (King's Ranch) in Kingsville, TX for A.R. Koog Plumbing Co. and the Exxon Corporation (N/K/A Exxon Mobil Corporation). He worked as a relief power plant operator, operated the power generating boilers and operated the steam turbine producing the steam used in the operation of the petrochemical processes. He performed new installations, maintenance and repairs as needed to the boiler and piping systems. While a direct employee, he re-tubed all of the boilers at the facility.

30. Mr. Koog worked at the Christus SPOHN Memorial Hospital in Corpus Christi, TX; the Baptist Church in Bishop, TX; the Baptist Church in Kingsville, TX and Kaufer High School in Riviera, TX for A.R. Koog Plumbing Company. He constructed new systems and performed maintenance and repairs on plumbing systems, HVAC, and water systems including plumbing construction, pipefitting, instrument fitting, fire-sprinkler fitting, boiler installation and repair.

31. From 1986 through at least 1990, Mr. Koog was employed by the Bandera Independent School District as the Maintenance Director. His job duties included performing and supervising all maintenance and repairs to buildings, machinery, electrical equipment, heating systems, air conditioning, water pressure systems, sewer systems, lighting systems, cafeteria equipment, refrigeration, boilers and pumps.

32. At present, it is known that Mr. Koog's US Navy, US Civil Service and Industrial employment related to these allegations includes the following work sites:

| From | To | Work Site |
|---|---|---|
| 1954 | 1956 | US Navy - USS Magoffin (APA-199) |
| 1954 | 1954 | US Navy - Naval Operating Base - San Diego, CA (aka Naval Training Center, US Naval Destroyer Base, Naval Repair Facility, 32nd Street Naval Station) |
| 1956 | 1958 | US Navy - USS Magoffin (APA-199) |
| 1958 | 1959 | US Navy Civil Service - Naval Construction Battalion Port Hueneme - Los Angeles, CA |
| 1960 | 1961 | US Navy - USS Calvert (APA-32) |
| 1961 | 1962 | US Navy - Naval Supply Depot - Seattle, WA |
| 1962 | 1963 | US Navy - USS General W.A. Mann AP 112 |

| From | To | Work Site |
|---|---|---|
| 1962 | 1962 | US Navy - USS Neches - AO 47 |
| 1963 | 1964 | US Navy - Hunters Point Naval Shipyard - San Francisco, CA (aka Treasure Island) |
| 1964 | 1965 | St. John's Hospital - Oxnard, CA |
| 1965 | 1966 | Shell Oil Refinery and Oil Fields - Ventura, CA |
| 1966 | 1970 | US Navy Civil Service - Naval Air Weapons Station China Lake - San Bernardino County, CA |
| 1970 | 1972 | US Navy Civil Service - Naval Air Weapons Station China Lake - San Bernardino County, CA |
| 1972 | 1972 | US Navy Civil Service – Naval Air Station Kingsville - Kingsville, TX |
| 1973 | 1974 | Baptist Church - Kingsville, TX |
| 1974 | 1974 | Baptist Church - Bishop, TX |
| 1974 | 1976 | Kings Ranch Gas Plant - Kings Ranch, TX (Kingsville) (Humble/Exxon) |
| 1976 | 1977 | Kaufer High School - Riviera, TX |
| 1978 | 1978 | Hoechst Celanese Chemical Plant - Bishop, TX (aka Corpus Christi, TX) |
| 1978 | 1978 | Hoechst Celanese Chemical Plant - Bishop, TX (aka Corpus Christi, TX) |
| 1978 | 1978 | Kings Ranch Gas Plant - Kings Ranch, TX (Kingsville) (Humble/Exxon) |
| 1979 | 1982 | Christus SPOHN Memorial Hospital - Corpus Christi, TX |
| 1983 | 1984 | Hoechst Celanese Chemical Plant - Bishop, TX (aka Corpus Christi, TX) |
| 1984 | 1984 | Hoechst Celanese Chemical Plant - Bishop, TX (aka Corpus Christi, TX) |
| 1984 | 1985 | Hoechst Celanese Chemical Plant - Bishop, TX (aka Corpus Christi, TX) |
| 1985 | 1986 | Hoechst Celanese Chemical Plant - Bishop, TX (aka Corpus Christi, TX) |
| 1986 | 1988 | Bandera Middle School - Bandera, TX |

| From | To | Work Site |
|---|---|---|
| 1989 | 1989 | Bandera High School - Bandera, TX |
| 1990 | 1990 | Bandera Elementary School - Bandera, TX |

## VI.

## COUNT I – STRICT LIABILITY – PRODUCT & EQUIPMENT DEFENDANTS

Cnt. I - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. I - 2. At all times from 1954 through 1990, Defendants knew, had reason to know or in the exercise of reasonable care should have known, that their asbestos-containing products, materials and equipment would be sold to the public including Mr. Koog or Mr. Koog's employers as aforesaid and would be used by or around Mr. Koog and other persons similarly employed, and would be relied on by such persons to be fit for the use and to accomplish the purpose for which they were manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, utilized on their premises or otherwise placed into the stream of commerce. The Defendants, because of their positions as manufacturers, sellers, designers, suppliers, distributors, miners, relabelers, resellers, processors, appliers, installers, specifiers, buyers, removers, manipulators, or utilizers, are strictly liable to the Plaintiff for the following reasons:

a. That Defendants, as manufacturers-sellers, were engaged in the business, inter alia, of selling asbestos-containing products, materials and equipment, which by

their very nature in containing asbestos were inherently defective and unreasonably dangerous to Mr. Koog, the end user;

b. That, at the time of the manufacture and sale of their asbestos-containing products, materials and equipment by the Defendants to Mr. Koog's employers or the other suppliers of the asbestos-containing products, materials and equipment to Mr. Koog's work sites, Defendants knew, had reason to know, or should have known, that their asbestos-containing products, materials and equipment would be used by or around Mr. Koog and other persons similarly employed, as the ultimate end user or consumer or otherwise affected person;

c. That the Defendants' asbestos-containing products, materials and equipment were sold in a defective condition, dangerous to Mr. Koog and others similarly employed, as users or consumers, and that, all throughout the many years of Mr. Koog's exposure to and use of the Defendants' asbestos-containing products, materials and equipment, the asbestos-containing products, materials and equipment were expected to and did reach the ultimate end user, Mr. Koog, without substantial change in the condition in which they were sold;

d. That the Defendants' asbestos-containing products, materials and equipment were defective in that they were incapable of being made safe for their intended, ordinary and foreseeable use, and the Defendants failed to give adequate or sufficient warnings or instructions about the risks and dangers inherent in the asbestos-containing products, materials and equipment; and

e. That the Defendants, in fact, did not exercise all possible care in the preparation and sale of their asbestos-containing products, materials and equipment; and

f. That the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, materials and equipment is an intrinsically dangerous and an ultra-hazardous activity.

Cnt. I - 3. The Defendants' breaches of their duty under traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, proximately caused or contributed to cause the Decedent to contract mesothelioma, which is permanent and fatal, and resulted in injury, damage and death to Decedent and the subsequent damages to Plaintiff.

Cnt. I - 4. The Defendants' breaches of their duty under traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result and/or were accomplished with such recklessness as to evince a conscious disregard for the health, safety and rights of the Decedent and also resulting in the damages suffered by Plaintiff.

Cnt. I - 5. In *E. River S.S. Corp. v. Transamerica Delaval Inc.*, the Supreme Court incorporated strict liability into maritime law, "recognizing product liability, including strict liability, as part of the general maritime Law". *See E. River S.S. Corp. v. Transamerica Delaval Inc.*, 476 US 858 (1986) at 865,866. Plaintiff may pursue a product liability claim under both strict liability and general negligence theories. *Id*. at 865-866. Following the *East River* decision, various appellate courts, including the 5th Circuit, have stated that §402(A) of the

Restatement (Second) of Torts is the "best expression" of the law of product liability under general maritime law. *See Vickers v. Chiles Drilling Co.*, 822 F.2d 537 (5th Cir. 1987). The application of the Restatement (Third) of Torts was considered by the United States 5th Circuit Court of Appeals' decision in *Garcia v. United States*. *See Garcia v. United States*, 986 F.3d 513 (5th Cir. 2021). The 5th Circuit Court of Appeals declined to follow the Restatement (Third) of Torts and, as such, the application of the Restatement (Second) of Torts §402(A) remains the controlling standard for strict liability in the 5th Circuit. *Id*.

Cnt. I - 6. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**VII.**

**COUNT II – NEGLIGENCE – ALL DEFENDANTS**

Cnt. II - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. II - 2. Mr. Koog was exposed to large quantities of asbestos and asbestos-containing products, materials and equipment. The common law imposed various duties on Defendants with respect to the safety and welfare of others such as Mr. Koog. Defendants breached those duties by a multitude of acts, omissions, and/or undertakings which amount to negligence, discussed more fully below. Defendants knew or, in the exercise of reasonable or ordinary care, should have known that the asbestos-containing products, materials and equipment they manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed,

manipulated, utilized on their premises or otherwise exposed Mr. Koog to were extremely dangerous and harmful to his health. As a proximate cause of such negligence, Plaintiff suffered injury, damages and death.

Cnt. II - 3. Additionally, without waiving any specific acts of negligence as to Defendants, Plaintiff hereby gives notice of the intent to rely on the doctrine of *res ipsa loquitur*, as Defendants' asbestos-containing products, materials and equipment were under the exclusive management and control of Defendants, and given that the character of Decedent's injuries, damages and death are such that they would ordinarily not have occurred in the absence of negligence.

Cnt. II - 4. At all material times, Defendants are or were manufacturers, sellers, designers, suppliers, distributors, miners, relabelers, resellers, processors, appliers, installers, specifiers, buyers, removers, manipulators, or utilizers of asbestos and/or asbestos-containing products, materials or equipment.

Cnt. II - 5. The Defendants, acting through their agents, servants and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing products, materials and equipment to be placed in the stream of interstate commerce with the result of those acts being that these said asbestos and asbestos-containing products, materials and equipment came into use by Mr. Koog.

Cnt. II - 6. The dangers of breathing asbestos were first published in the medical literature in the 1890s. By the late 1950s, there were hundreds of medical articles highlighting the dangers of being around asbestos dust. Confidential corporate documents from many of the named Defendants reveal that: (a) the dangers of asbestos were well understood; (b)

asbestos was cheaper to use in the products than replacement substances; and, (c) the asbestos product manufacturing industry actively fought governmental regulation and the banning of asbestos. To this day, the asbestos product manufacturing industry has been continuing their lobbying efforts to keep asbestos legal in the United States, as most recently exemplified in last month's announcement that the EPA will reconsider the ban on chrysotile asbestos in certain products.

Cnt. II - 7. Throughout the course of his employment, Mr. Koog worked with and was exposed to the asbestos and asbestos-containing products, materials and equipment manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, or utilized on their premises by the Defendants.

Cnt. II - 8. During the course and scope of his employment, Mr. Koog was exposed to Defendants' asbestos and asbestos-containing products, materials and equipment and that exposure directly and proximately caused him to develop an illness known and designated as mesothelioma, a signal cancer known to be caused by asbestos.

Cnt. II - 9. Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn Mr. Koog, and foreseeable users of said products, of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable or ordinary care, should have known.

Cnt. II - 10. Mr. Koog, whose livelihood was dependent upon the work that he did at the various work sites listed was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that were manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, or utilized on their premises by Defendants. Defendants knew or should have known that persons employed in the same manner as Mr. Koog would be required to and would come into contact with and would work in close proximity to said products.

Cnt. II - 11. Mr. Koog sustained injuries caused by no fault of his own and which could not be avoided through the use of his reasonable care. Mr. Koog's development of the asbestos-related cancer, mesothelioma, was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, utilized on their premises or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Mr. Koog's body, lungs, respiratory system, health and general well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Mr. Koog would not know of such dangers to his health.

Cnt. II - 12. Mr. Koog's illness, disability and death are the direct and proximate result of the negligence and carelessness of Defendants, jointly, in that, even though the Defendants

knew, or in the exercise of reasonable or ordinary care should have known, that the asbestos and asbestos-containing products, materials and equipment were deleterious, poisonous, cancer-causing and highly harmful to Mr. Koog's body, lungs, respiratory system and health they did nothing to protect Mr. Koog and in such inaction breached their duty to Mr. Koog.

Cnt. II - 13. Defendants breached their duties, by failing to exercise reasonable or ordinary care and caution for the safety of Mr. Koog, and were negligent in one or more of the following acts and/or omissions:

a. Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons, such as Mr. Koog, working with or around them would inhale asbestos fibers;

b. Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, cancer-causing, poisonous and highly deleterious effect upon the health of persons inhaling them, such as Mr. Koog;

c. Designed, manufactured and sold equipment, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

d. Affirmatively chose not to advise Mr. Koog of the dangerous characteristics of their asbestos and/or asbestos-containing products, materials and equipment;

e. Affirmatively chose not to provide Mr. Koog with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and

appliances to reduce the exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious, toxic, cancer-causing and harmful asbestos-containing products, materials and equipment;

f. Affirmatively chose not to place any warnings, or sufficient warnings, on their containers of said asbestos and asbestos-containing products, materials and equipment to warn the users of the dangers to health by coming into contact with said asbestos and asbestos-containing products, materials and equipment;

g. Affirmatively chose not to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing said asbestos-containing products, materials and equipment, if any existed;

h. Inadequately warned, if, in fact, they warned at all, persons such as Mr. Koog of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing products, materials and equipment;

i. Chose not to recommend methods to improve the work environment;

j. Affirmatively chose not to develop alternative products;

k. Continued to use a known cancer-causing product, to wit: asbestos; and;

l. After discovering that asbestos exposure caused progressive lung disease, the Defendants affirmatively chose not to inform Mr. Koog, or any other similarly

situated persons, of the need for monitoring and periodic evaluations up to and including the filing of this civil action.

Cnt. II - 14. Defendants, at the time of manufacturing, selling, designing, suppling, distributing, mining, relabeling, reselling, processing, applying, installing, specifying, buying, removing, manipulating, utilizing on their premises or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products, materials and equipment. The products, materials and equipment in question were defective at the time they left the control of the Defendants.

Cnt. II - 15. Defendants were negligent and breached their duty of due care to Mr. Koog by taking or choosing not to take the actions as previously alleged to avoid harm to Mr. Koog and other foreseeable users, in light of the reasonably foreseeable dangers caused by the manufacturing, selling, designing, suppling, distributing, mining, relabeling, reselling, processing, applying, installing, specifying, buying, removing, manipulating, utilizing of the asbestos and/or asbestos-containing products, materials, or equipment at issue as placed into the stream of commerce.

Cnt. II - 16. The hazards posed by exposure to asbestos and/or asbestos-containing products, materials, or equipment and the resulting injuries and damages to Mr. Koog were reasonably foreseeable or should have been reasonably foreseen by Defendants.

Cnt. II - 17. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Mr. Koog developed mesothelioma, as a consequence of which, through no fault of his own, he was severely injured, disabled and died.

Cnt. II - 18. The Defendants' breaches of their duty under traditional maritime negligence standards, as restated and summarized in the Restatement (Second) of Torts and Restatement (Third) of Torts, proximately caused or contributed to cause the Decedent to contract mesothelioma, which is permanent and fatal.

Cnt. II - 19. In *Air & Liquid Sys. Corp. v. DeVries*, Supreme Court Justice Kavanaugh cited the Restatement (Third) of Torts: Liability for Physical and Emotional Harm, and the Restatement (Second) of Torts, for basic tort-law principles of general maritime negligence. *See Air & Liquid Sys. Corp. v. DeVries*, 586 US 446 (2019) at 381.

Cnt. II - 20. The 5th Circuit Court of Appeals has held that "Negligence is an actionable wrong under the general maritime law". *See Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840 (5th Cir. 2005).

Cnt. II - 21. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**VIII.**

**COUNT III – ADDITIONAL NEGLIGENCE OF PREMISES DEFENDANTS**

Cnt. III - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. III - 2. The manner of use of asbestos and asbestos-containing materials at Defendants' premises and/or facilities created unreasonably dangerous conditions for workers, such as Mr. Koog. Moreover, Mr. Koog was exposed to asbestos and asbestos-containing

materials while on Defendants' premises as an invitee. As the possessors, owners, operators, managers, and/or occupiers of the premises, Defendants had non-delegable duties to keep the premises safe for invitees. Defendants failed to exercise reasonable care to protect Mr. Koog from the foreseeable dangers associated with exposure to asbestos and asbestos-containing materials, in both failing to adequately warn Mr. Koog and failing to make the dangerous conditions safe. Defendants knew or, in the exercise of ordinary care, should have known that asbestos and asbestos-containing materials were carcinogenic, poisonous, toxic, and extremely dangerous and hazardous to human health and that there was a likelihood of an injury or disease to any person, including Mr. Koog, who was exposed to asbestos and asbestos-containing materials. Defendants' failure to protect Mr. Koog from the known and/or foreseeable dangers of exposure to asbestos and asbestos-containing materials constitutes negligence.

Cnt. III - 3. Such negligence was a proximate cause of Plaintiff's injuries, damages and Decedent's death.

Cnt. III - 4. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## IX.

## COUNT IV – ADDITIONAL NEGLIGENCE OF CONTRACTOR DEFENDANTS

Cnt. IV - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. IV - 2. Defendants were negligent in their sale, provision, installation, use, maintenance, distribution, repair, abatement, removal and/or "tear out" of dangerous and deadly asbestos-containing products causing exposures to Mr. Koog.

Cnt. IV - 3. The Defendants had a common law and statutory duty, as well as a legal responsibility to ensure their work was performed safely and without causing harm to others. These duties extend to their client, other contractors or the public. Those duties extended to Mr. Koog. The Defendants' duty in ensuring safety in inherently dangerous activities cannot be delegated.

Cnt. IV - 4. Defendants breached their duty by failing to ensure safety by using asbestos-containing thermal insulation and refractory insulations on the boilers, pumps, valves, heat exchangers, pressure vessels, catalyst systems, piping systems and storage systems on the premises where Mr. Koog was present while that work, with inherently dangerous asbestos-containing materials, was being performed.

Cnt. IV - 5. Defendants breached their duty by failing to ensure the safety of Mr. Koog by not utilizing any safety measures such as: utilizing dust suppression techniques, cordoning off safe distances for bystanders or to even warn other workers, such as Mr. Koog, of their inherently dangerous work with asbestos-containing products.

Cnt. IV - 6. Defendants' failure to ensure safety in an inherently dangerous activity, to prevent exposures to asbestos and asbestos-containing materials from occurring or to even warn of the hazards known to them concerning asbestos and asbestos-containing materials was a proximate and contributing cause of Mr. Koog's injuries, damages and death.

Cnt. IV - 7. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## X.

## COUNT V – BREACH OF WARRANTY – PRODUCT & EQUIPMENT DEFENDANTS

Cnt. V - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. V - 2. The Defendants all impliedly, and some expressly, warranted that their asbestos and/or asbestos-containing products, materials and equipment were of good and merchantable quality and fit for their intended use.

Cnt. V - 3. The implied and express warranty made by the Defendants that the asbestos and asbestos-containing products, materials or equipment were of good and merchantable quality and suitable for the particular intended use was breached. As a result of that breach, certain harmful, poisonous, and deleterious matter was given off into the atmosphere of the work sites where Mr. Koog carried out his duties while working with or in the vicinity of asbestos and asbestos-containing products, materials or equipment that had been warranted as of good quality and merchantable. The Defendants breached their duty in one or more of the following:

a. The Defendants knew or in the exercise of reasonable care ought to have known that their asbestos-containing products, materials or equipment were defective and that such products were not suitable for the purposes for which they were intended; and/or

b. The Defendants should have tested their products, materials or equipment, especially those containing asbestos, to ascertain the safe or dangerous nature of such products, materials or equipment before offering them for sale, or in the

alternative, should have removed such products, materials or equipment from the market upon ascertaining that such products, materials or equipment would cause mesothelioma, asbestosis and other life- threatening diseases; and/or

c. The Defendants should have devised a method of application for their products, materials or equipment, especially those containing asbestos, which would have kept those using such products, like Mr. Koog, from contracting mesothelioma if the Defendants would not remove such products, materials or equipment from sale to the public.

Cnt. V - 4. The asbestos-containing products, materials and equipment of the Defendants, were warranted, either impliedly or expressly, to be merchantable, when in truth they were not, and therefore, the Defendants breached the warranty of merchantability.

Cnt. V - 5. As a direct and proximate result of this breach of the implied and/or express warranty of good and merchantable quality and fitness for the particular intended use of the Defendants' asbestos and asbestos-containing products, materials or equipment, Mr. Koog developed an asbestos-related cancer, mesothelioma, suffering injuries, damages and death.

Cnt. V - 6. In *Berge Helene Ltd. v. GE Oil & Gas, Inc.*, this Court has found that admiralty jurisdiction and maritime law applies to breach of warranty claims. *See Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582 (S.D. Tex. 2012).

Cnt. V - 7. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## XI.

## COUNT VI – NEGLIGENT SUPPLY OF DANGEROUS CHATTEL – EMPLOYER & PREMISES DEFENDANTS

Cnt. VI - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. VI - 2. Mr. Koog had substantial occupational exposure to asbestos while as an employee of the Employer Defendants and on the work sites of the Premises Defendants. At all times, Mr. Koog was a foreseeable ultimate user of the materials supplied to him by Employer Defendants and Premises Defendants.

Cnt. VI - 3. Mr. Koog worked as a Boilermaker, Pipefitter, Steam Plant Operator, Instrument Fitter and Plumber for the Employer Defendants and Premises Defendants; and, thus inherently had substantial exposure to asbestos from the asbestos-containing materials supplied by the Employer Defendants and Premises Defendants, which he personally used. The asbestos and asbestos-containing materials Mr. Koog used at those work sites were supplied by Employer Defendants and Premises Defendants.

Cnt. VI - 4. Employer Defendants and Premises Defendants did not warn Mr. Koog about the dangers of the asbestos-containing materials supplied to him, and failed to give him adequate or timely instructions or warnings about how to work with the materials in a reasonably safe manner, if such a manner existed.

Cnt. VI - 5. At the time Mr. Koog worked with the asbestos-containing materials supplied by Employer Defendants and Premises Defendants, Mr. Koog was unaware of the hazards of the asbestos-containing materials to which he was exposed. The asbestos and asbestos-

containing products and materials were inherently unsafe for the foreseeable uses of those products and materials.

Cnt. VI - 6. At the time Mr. Koog worked with the asbestos-containing materials supplied by Employer Defendants and Premises Defendants, they had actual knowledge of the potential hazards posed by exposure to asbestos-containing materials, but failed to adequately or timely warn Mr. Koog about those hazards. Employer Defendants and Premises Defendants had actual knowledge that asbestos and asbestos-containing materials posed a hazard to human health due to information and articles from scientific and medical journals received by those Defendants and their employees, and due to information and documents received from their trade associations. Employer Defendants and Premises Defendants also had actual knowledge of the hazards of asbestos imputed by law:

i. in 1957, the State of Texas imposed exposure limits to asbestos in the workplace; and

ii. in 1969, Federal contracts over $10,000 were required to adhere to a workplace standard of 12 fibers per cubic centimeter of air; and

iii. in 1970, California passed their own Clean Air Act establishing exposure limits on asbestos in the workplace. However, it is believed that the earliest point in time for the State of California to have imposed exposure limits to asbestos in the workplace is in the immediate years following the 1946 establishment of a maximum acceptable concentration for occupational asbestos exposure by the American Conference of Governmental

Industrial Hygienists. The exact date cannot be readily determined due to statutes being superseded.

Cnt. VI - 7. By their conduct, Employer Defendants and Premises Defendants breached one or more of the following duties imposed upon them:

a. In *FFE Transp. Servs. v. Fulgham*, the Texas Supreme Court recognized a duty to exercise ordinary care on the part of a person who hires an independent contractor and supplies material to the contractor for use in the relevant work. *See FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84 (Tex. 2004). The California Supreme Court has held “that the duty of employers and premises owners to exercise ordinary care in their use of asbestos includes preventing exposure to asbestos carried by the bodies and clothing of on-site workers.” *See Kesner v. Superior Court*, 1 Cal. 5th 1132 (2016).

b. Restatement (Second) of Torts §392, which has been adopted by the Texas courts and the California courts, provides:

  i. One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by whose persons for whose use the chattel is supplied:

    1. if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

2. if he fails to exercise reasonable care to discover its dangerous condition or character and to inform those whom he should expect to use it.

*See*, e.g., *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 223 (Tex. 1963); *Rawlings v. D.M. Oliver, Inc.*, 97 Cal. App. 3d 890 (Ct. App. 4th Dist. 1979).

c. The Restatement (Second) of Torts §388, which has been adopted by the Texas courts and the California courts, provides:

i. One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied if the supplier

1. knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

2. has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

3. fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*See*, e.g., *Humble Sand & Gravel v. Gomez*, 146 S.W.3d 170 (Tex. 2004); *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 223 (Tex. 1963); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 1999, pet.

denied); *Stevens v. Parke, Davis, & Co.*, 9 Cal. 3d 51 (1973); *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56 (2008).

d. Moreover, the Restatement (Second) of Torts §388 has been adopted by specific reference as applicable to maritime jurisdiction cases, *see Air & Liquid Sys. Corp. v. DeVries*, 586 US 446 (2019) at 381.

e. The Restatement (Second) of Torts §389, which has been adopted by the Texas courts, provides:

i. One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

*See*, e.g., Jaimes v. Fiesta Mart, Inc., 21 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Cnt. VI - 8. The acts and omissions of Employer Defendants and Premises Defendants breached one or more of these duties, and were a substantial contributing factor and proximate cause of Mr. Koog's asbestos-related mesothelioma and resulting injuries, damages and death.

Cnt. VI - 9. Employer Defendants and Premises Defendants violated these standards when they supplied Mr. Koog with asbestos-containing materials. The Defendants knew, or in the exercise of reasonable and ordinary care should have known, that the asbestos-containing materials that they supplied to Mr. Koog were dangerous, toxic and cancer-causing. Mr. Koog did not know of such dangers. Defendants never made the inherently dangerous asbestos-containing materials they supplied to Mr. Koog safe. Defendants never warned Mr. Koog about the dangers of the asbestos-containing materials they supplied to him and they failed to give him adequate or timely instructions or warnings about how to work with the asbestos-containing materials in a reasonably safe manner, if such a manner exists. Defendants should not have supplied the inherently dangerous asbestos-containing materials to Mr. Koog in the first place.

Cnt. VI - 10. The cause of action alleged in this Count is separate and independent of the duty to provide a safe workplace, premises liability, or any other premises liability theory. The fact that Employer Defendants and Premises Defendants owned real property does not immunize them from all other duties and responsibilities imposed by the abovementioned state and federal law. Thus, Employer Defendants and Premises Defendants should have provided adequate and timely warnings of the hazards of the asbestos and asbestos-containing materials which they supplied and to which Mr. Koog was exposed, should have made the asbestos-containing materials safe or should not have provided the asbestos-containing materials at all.

Cnt. VI - 11. The breaches of these duties by the Employer Defendants and Premises Defendants proximately caused and substantially contributed to cause Mr. Koog to

develop the asbestos-related cancer, mesothelioma, which resulted in his injury, damages and death.

Cnt. VI - 12. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**XII.**

**COUNT VII – FALSE REPRESENTATION/MISREPRESENTATION/FRAUD – ALL DEFENDANTS**

Cnt. VII - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. VII - 2. During, before, and after Mr. Koog's exposure to asbestos products manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, utilized on their premises or otherwise used by Defendants, Defendants falsely represented facts, including the dangers of asbestos exposure, to Mr. Koog in the particulars alleged in the paragraphs above, while Defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Mr. Koog, and while Defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

Cnt. VII - 3. Defendants made false representations and misrepresentations to workers and users of their products, materials and equipment such as Mr. Koog in the following ways:

a. false representations that reasonably implied asbestos and asbestos-containing products, materials and equipment were safe and would not cause injury;

b. misrepresentations concerning material facts about the character, composition and quality of the asbestos and asbestos-containing products, materials and equipment;

c. misrepresentations concerning testing performed upon or with the asbestos and asbestos-containing products, materials and equipment;

d. misrepresentations concerning if testing had even been done on the asbestos and asbestos-containing products, materials and equipment; and

e. misrepresentations concerning governmental regulations of the asbestos and asbestos-containing products, materials and equipment.

Cnt. VII - 4. Decedent justifiably relied upon Defendants' misrepresentations. Plaintiff's injuries, damages and Decedent's death were proximately caused by the reliance on Defendants' misrepresentations.

Cnt. VII - 5. Further, Defendants owed Mr. Koog duties under general maritime law to warn and disclose information relating to the hazards of asbestos to which Mr. Koog was exposed. Defendants failed to disclose material facts regarding the dangerous propensities of asbestos exposure that were known to and within the knowledge of Defendants. Defendants were well aware of the lack of knowledge on behalf of workers, such as Mr. Koog, and of the incredible disparity between Defendants' and Mr. Koog's opportunity to fully appreciate and discover the dangerous character of asbestos exposure. By failing to disclose the knowledge known and appreciated by Defendants, Defendants intended to induce Mr. Koog into going about his job without worry.

Cnt. VII - 6. The foregoing representations were material conditions precedent to Mr. Koog's continued exposure to asbestos-containing products, materials and equipment, and Defendants each intended that Mr. Koog act upon the representations by continuing his exposure to the asbestos products, materials and equipment. Mr. Koog was ignorant of the falsity of Defendants' representations and fairly relied upon the representations.

Cnt. VII - 7. Without such knowledge and the benefit, and right, of informed choice because of the false representations and misrepresentations of the Defendants regarding the dangers known to Defendants, Decedent and Plaintiff suffered the injuries and damages complained of herein.

Cnt. VII - 8. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**XIII.**

**COUNT VIII – FAILURE TO WARN – ALL DEFENDANTS**

Cnt. VIII - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. VIII - 2. At all times material hereto, the Defendants knew or should have known of the harmful effects and harmful dangers of working with asbestos and asbestos-containing products, materials, or equipment and exposures to inhalable asbestos.

Cnt. VIII - 3. Defendants had a duty to warn individuals working at Mr. Koog's work sites, including but not limited to Mr. Koog, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

Cnt. VIII - 4. Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and asbestos-

containing products, materials, or equipment, Defendants affirmatively chose not to warn and/or inadequately warned Mr. Koog of the dangers, including but not limited to:

a. choosing not to provide adequate cautions, warnings, and/or hazard statements and/or explanations with their products, materials, or equipment which should have been designed to provide Mr. Koog knowledge about the hazards caused by exposure to their products, materials, or equipment and how to eliminate such hazards, if even possible;

b. choosing not to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products, materials, or equipment which should have been designed to provide Mr. Koog knowledge about the hazards caused by exposure to its products, materials, or equipment and how to eliminate such hazards, if even possible;

c. choosing not to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, materials, or equipment, and how to eliminate the hazards, if even possible;

d. choosing not to adequately test and research their products, materials, or equipment as to the hazards created during their use and failing thereafter to provide the results of such tests and research to exposed workers, such as Mr. Koog;

e. choosing not to inspect the workplace in which their products, materials, or equipment were being used to determine whether the products, materials, or equipment being used were deleterious to the health of exposed workers;

f. choosing not to design, process and transport their products, materials, or equipment in a manner intended to minimize exposure during normal working conditions;

g. choosing not to specify and market their products, materials, or equipment on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products, materials, or equipment after it was known or should have been known that adequate protective measures were not being implemented;

h. choosing not to recall their defective product or manufacture a reasonably safer alternative;

i. choosing not to take adequate precautions and industrial hygiene measures to protect Mr. Koog and exposing workers when installing, repairing, or tearing out asbestos and asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process;

j. choosing not to use local ventilation;

k. choosing not to provide warnings to Mr. Koog and workers in the facilities at issue that exposure to dust and fibers from asbestos and asbestos-containing products, materials, or equipment was hazardous and carcinogenic;

l. choosing not to adequately clean up debris from the installation, repair and/or removal process of asbestos and asbestos-containing materials;

m. failing to use "wet down" procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

n. otherwise choosing not to act reasonably under the totality of the circumstances.

Cnt. VIII - 5. Defendants manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, utilized on their premises or otherwise used asbestos and asbestos-containing products, materials, or equipment that was used by Mr. Koog. Thus, Defendants had a duty to warn individuals working at Mr. Koog's work sites, including but not limited to Mr. Koog, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and asbestos-containing products, materials, or equipment.

Cnt. VIII - 6. Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in choosing not to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and asbestos-containing products, materials, or equipment.

Cnt. VIII - 7. At the time the asbestos and asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable user, such as Mr. Koog.

In the alternative, after the asbestos-containing products, materials, or equipment left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable user, such as Mr. Koog, and refused to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

Cnt. VIII - 8. Defendants' conscious decision not to provide adequate warnings as to the hazards associated with exposure to asbestos and asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and asbestos-containing products, materials, or equipment caused Mr. Koog to develop mesothelioma as a consequence of which he has been injured, damaged and died and claims damages of the Defendants jointly.

Cnt. VIII - 9. As a result of the Defendants affirmatively choosing not to warn, Plaintiff and Decedent suffered and will continue to suffer the following injuries and damages hereinafter alleged.

Cnt. VIII - 10. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## XIV.

### COUNT IX - FAILURE TO WARN – EQUIPMENT DEFENDANTS

Cnt. IX - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. IX - 2. Under general maritime law, Equipment Defendant manufacturers have a duty to warn if the following elements are satisfied, as set forth in *Air & Liquid Sys. Corp. v. DeVries*, 586 US 446 (2019):

(1) A product requires incorporation of a part when:

(a) a manufacturer directs that the part be incorporated, or

(b) a manufacturer itself makes the product with a part that the manufacturer knows will require replacement with a similar part, or

(c) a product would be useless without the part

(2) The manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and

(3) The manufacturer has no reason to believe that the product's users will realize that danger.

Cnt. IX - 3. Defendants directed that part, asbestos, to be incorporated into their asbestos-containing products, materials and equipment, including but not necessarily limited to gaskets, packing, asbestos rope, asbestos tape, millboards and other friction elements.

Cnt. IX - 4. Defendants knew or should have known that any integrated asbestos part in their products would have dangerous, deleterious, toxic, and cancer-causing effects to the intended users working with those asbestos-containing products, materials, or equipment and therefore generally inhaling asbestos.

Cnt. IX - 5. Defendants knew or should have known that the danger posed by the asbestos-containing products was not obvious to intended users, such as Mr. Koog. These users were not trained in the toxicological risks of asbestos, had no medical or industrial

hygiene background, and were not provided with independent warnings or safety instructions from Defendants. In the alternative, after the asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their product posed a substantial risk of harm to a intended user, such as Mr. Koog, and refused to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances. Accordingly, Defendants could not reasonably assume that intended product users would recognize the latent and long-term health risks posed by exposure to asbestos-containing parts and products.

Cnt. IX - 6. As a result, Defendants had a duty to warn individuals working at Mr. Koog's work sites, including but not limited to Mr. Koog, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

Cnt. IX - 7. This duty was breached as despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and asbestos-containing products, materials, or equipment, Defendants affirmatively chose not to warn and/or inadequately warned Mr. Koog of the dangers, including but not limited to:

a. choosing not to provide adequate cautions, warnings, and/or hazard statements and/or explanations with their products, materials, or equipment which should have been designed to provide Mr. Koog knowledge about the hazards caused by exposure to their products, materials, or equipment and how to eliminate such hazards, if even possible;

b. choosing not to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products, materials, or equipment which should have been designed to provide Mr. Koog knowledge about the hazards caused by exposure to its products, materials, or equipment and how to eliminate such hazards, if even possible;

c. choosing not to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, materials, or equipment, and how to eliminate the hazards, if even possible;

d. choosing not to adequately test and research their products, materials, or equipment as to the hazards created during their use and failing thereafter to provide the results of such tests and research to exposed workers, such as Mr. Koog;

e. choosing not to inspect the workplace in which their products, materials, or equipment were being used to determine whether the products, materials, or equipment being used were deleterious to the health of exposed workers;

f. choosing not to design, process and transport their products, materials, or equipment in a manner intended to minimize exposure during normal working conditions;

g. choosing not to specify and market their products, materials, or equipment on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the

products, materials, or equipment after it was known or should have been known that adequate protective measures were not being implemented;

h. choosing not to recall their defective product or manufacture a reasonably safer alternative;

i. choosing not to take adequate precautions and industrial hygiene measures to protect Mr. Koog and exposing workers when installing, repairing, or tearing out asbestos and asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process;

j. choosing not to use local ventilation;

k. choosing not to provide warnings to Mr. Koog and workers in the facilities at issue that exposure to dust and fibers from asbestos and asbestos-containing products, materials, or equipment was hazardous and carcinogenic;

l. choosing not to adequately clean up debris from the installation, repair and/or removal process of asbestos and asbestos-containing materials;

m. failing to use "wet down" procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

n. otherwise choosing not to act reasonably under the totality of the circumstances.

Cnt. IX - 8. Defendants manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated, utilized on their premises or otherwise used asbestos and asbestos-containing products, materials, or equipment that was used by Mr. Koog. Thus, Defendants had a duty to warn

individuals working at Mr. Koog's work sites, including but not limited to Mr. Koog, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and asbestos-containing products, materials, or equipment.

Cnt. IX - 9. Defendants' conscious decision not to provide adequate warnings as to the hazards associated with exposure to asbestos and asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and asbestos-containing products, materials, or equipment caused Mr. Koog to develop mesothelioma as a consequence of which he has been injured, damaged and died and claims damages of the Defendants jointly.

Cnt. IX - 10. As a result of the Defendants affirmatively choosing not to warn, Plaintiff and Decedent suffered and will continue to suffer the following injuries and damages hereinafter alleged.

Cnt. IX - 11. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## XV.

## COUNT X – CONSPIRACY – ALL DEFENDANTS

Cnt. X - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. X - 2. Plaintiff further alleges that **METROPOLITAN LIFE INSURANCE COMPANY** and all the other Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated, and conspired among themselves to cause Mr. Koog's injuries and illnesses by exposing Mr. Koog to harmful and dangerous asbestos-containing

products, materials, and equipment requiring or calling for the use of asbestos and/or asbestos-containing products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Mr. Koog of the opportunity of informed free choice as to whether to use said asbestos-containing products, materials, and equipment.

Cnt. X - 3. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' asbestos-containing products, materials, and equipment.

Cnt. X - 4. In furtherance of said conspiracies, Defendants performed the following overt acts:

a. for many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos-containing products, materials, and equipment which caused the release of respirable asbestos fibers was unreasonably dangerous, hazardous, deleterious, carcinogenic, and potentially deadly;

b. despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully, and maliciously withheld, concealed and suppressed said medical and scientific data, literature, and test reports regarding the risks of cancer, specifically mesothelioma, from persons, like Mr. Koog, who

were using and being exposed to asbestos-containing products, materials, and equipment.

c. distorted the results of medical examinations conducted upon workers and others such as Mr. Koog who were using asbestos-containing products, materials, and equipment by falsely stating and/or concealing the nature and extent of the harm which workers have suffered.

Cnt. X - 5. By the false and fraudulent representations, omissions, and concealments set forth above, Defendants, individually, jointly and in conspiracy with each other, intended to induce Mr. Koog to rely upon said false and fraudulent representations, omissions, and concealments and to continue to expose himself to the asbestos containing products, materials, and equipment.

Cnt. X - 6. In addition, certain of the Defendants, including but not limited to **METROPOLITAN LIFE INSURANCE COMPANY**, contrived, combined, confederated and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect workers such as Mr. Koog from contracting mesothelioma.

Cnt. X - 7. As a direct and proximate result of Mr. Koog's reliance on Defendants' false and fraudulent representations, omissions, and concealments, Mr. Koog was injured, damaged, and died.

Cnt. X - 8. Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, through its Policyholders Service Bureau undertook duties owed by the asbestos-producing Defendants to Mr. Koog by the testing of asbestos workers and the conduct of scientific studies. These duties included without limitation, the duties:

a. to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

b. to instruct fully and adequately in the uses of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

Cnt. X - 9. In undertaking these duties, **METROPOLITAN LIFE INSURANCE COMPANY** knew or should have known that it was providing testing services for the ultimate protection of the end user of those asbestos containing products, materials, and equipment, including Mr. Koog.

Cnt. X - 10. In both conducting said tests and in publishing their alleged results, **METROPOLITAN LIFE INSURANCE COMPANY** failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. **METROPOLITAN LIFE INSURANCE COMPANY** also published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

Cnt. X - 11. Mr. Koog unwittingly but justifiably relied upon the thoroughness of **METROPOLITAN LIFE INSURANCE COMPANY'S** tests and information dissemination, the

results of which **METROPOLITAN LIFE INSURANCE COMPANY** published in leading medical journals.

Cnt. X - 12. As a direct and proximate result of **METROPOLITAN LIFE INSURANCE COMPANY'S** failure to accurately conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so, the risk of harm to Mr. Koog from asbestos exposure was increased, and he suffered injury, damage, and death.

Cnt. X - 13. By committing the overt acts of failing to fully and accurately test for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the asbestos-producing Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, **METROPOLITAN LIFE INSURANCE COMPANY** acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Mr. Koog.

**XVI.**

**COUNT XI – GROSS NEGLIGENCE: WILLFUL, WANTON AND RECKLESS CONDUCT – ALL DEFENDANTS**

Cnt. XI - 1. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

Cnt. XI - 2. Mr. Koog, and others in his position, worked in close proximity to the asbestos and asbestos-related materials manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated,

utilized on their premises or otherwise used by the Defendants, and the exposure and hazard to each of them, in Mr. Koog's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants.

Cnt. XI - 3. Defendants have known or should have known since at least 1929, and possibly as early as 1890, of medical and scientific data which clearly indicates that asbestos, and asbestos-containing products, were hazardous to the health and safety of Mr. Koog, and others in Mr. Koog's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and chose not to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, Mr. Koog has been severely injured, damaged and killed.

Cnt. XI - 4. Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure, thus denying Mr. Koog the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

a. affirmatively choosing not to warn users when the Defendants had knowledge of the need for monitoring due to prior exposure;

b. affirmatively choosing not to recall their products;

c. intentionally or with a reckless disregard for the safety of Mr. Koog, included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons, such as Mr. Koog, working with or around these asbestos-containing products would inhale asbestos fibers;

d. intentionally or with a reckless disregard for the safety of Mr. Koog included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling them;

e. intentionally or with a reckless disregard for the safety of Mr. Koog, included asbestos in their products when adequate substitutes for the asbestos in them were available;

f. intentionally or with a reckless disregard for the safety of Mr. Koog, failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling the asbestos fibers in them;

g. intentionally or with a reckless disregard for the safety of Mr. Koog, failed to provide any or adequate instructions concerning the safe methods of working with and around the asbestos-containing products, including specific instructions on how to avoid inhaling the asbestos fibers in them;

h. intentionally or with a reckless disregard for the safety of Mr. Koog, failed to conduct tests on the asbestos-containing products manufactured, sold, designed, supplied, distributed, mined, relabeled, resold, processed, applied, installed, specified, bought, removed, manipulated and/or utilized on their premises in order to determine the hazards to which

workers might be exposed while working with the products and/or conspired with others to conceal the results of such tests;

i. intentionally or with a reckless disregard for the safety of Mr. Koog designed, manufactured and sold equipment, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components;

j. frustrating the publication of articles and literature from 1929 through at least 1976;

k. rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products, such rejection being motivated by the possibility of adverse effects on profits; and

l. the intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

Cnt. XI - 5. The affirmative acts of the Defendants, and each of them, were intentionally and willfully done with reckless disregard of the safety of Mr. Koog and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effects of asbestos and asbestos-containing products, materials or equipment upon the body of human beings, including Mr. Koog and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants, and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Mr. Koog and others similarly situated.

Cnt. XI - 6. Plaintiff and Decedent are thereby entitled to punitive damages.

Cnt. XI - 7. Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Decedent, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users, like Decedent, of their asbestos-containing products, materials or equipment.

Cnt. XI - 8. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## XVII.

## DAMAGES

33. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

34. As a direct and proximate result of Defendants' conduct detailed above, Decedent sustained a multitude of severe and incapacitating injuries. Upon trial of this case, Plaintiff respectfully requests the Court and jury to determine the amount of loss Plaintiff and Decedent incurred in the past and will incur in the future. There are certain elements of damages provided by law that Plaintiff is entitled to have the jury separately consider to reasonably compensate Plaintiff for the injuries, damages and losses incurred. Plaintiff was damaged in the following particulars:

    a. Decedent suffered great physical pain and mental anguish;

    b. Decedent incurred hospital and/or medical and/or pharmaceutical and/or other related expenses;

    c. Decedent suffered physical impairment;

d. Decedent suffered the loss of his general health, strength, and vitality;

e. Plaintiff suffered the loss of pecuniary contributions from the Decedent;

f. Decedent suffered permanent disability;

g. Decedent required medical monitoring;

h. Decedent required domestic help and nursing care due to his disabilities;

i. Plaintiff and the heirs and wrongful death beneficiaries of Mr. Koog seek damages for loss of consortium;

j. Plaintiff also asserts a claim for prejudgment interest on all elements of damages as allowed by law; and,

k. Plaintiff seeks actual, compensatory, punitive and exemplary damages which Plaintiff alleges are in excess of the minimum jurisdictional limits of this Court.

35. Under general maritime law, there is a two-step framework for determining which types of damages a plaintiff can seek, as set forth in *Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009):

a. Whether the relief sought has been historically available under general maritime law, and

b. Whether any statutes explicitly precludes the requested relief.

36. All of the damages delineated above have been historically available under general maritime law and there are no statutes explicitly precluding the relief sought.

## XVIII.

## WRONGFUL DEATH & SURVIVAL DAMAGES

37. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

38. As Arthur R. Koog suffered an asbestos-related death, Plaintiff, on behalf of his heirs and wrongful death beneficiaries seeks the following general and special damages including, but not limited to, damages for survival and wrongful death claims, that she has sustained both in her individual capacity and as the Personal Representative of the Estate of Arthur R. Koog:

    a. the conscious physical pain and suffering sustained by Mr. Koog prior to his death;
    b. the mental anguish sustained by Mr. Koog prior to his death;
    c. the physical impairment suffered by Mr. Koog prior to his death;
    d. the disfigurement suffered by Mr. Koog prior to his death;
    e. reasonable and necessary medical expenses incurred by Mr. Koog prior to his death;
    f. reasonable funeral and burial expenses incurred by Mr. Koog and his estate;
    g. the loss of household services, consortium, pecuniary loss, companionship and society which heirs and wrongful death beneficiaries of Mr. Koog received from Mr. Koog prior to his last illness and death;
    h. the mental anguish suffered by heirs and wrongful death beneficiaries of Mr. Koog as a consequence of the last illness and death of Mr. Koog;
    i. punitive and exemplary damages as allowed by law to punish Defendants for proximately causing Mr. Koog's untimely death;

j. prejudgment interest on all elements of damages as allowed by law; and,

k. any other actual, compensatory, punitive and exemplary damages for which Plaintiff is entitled to recover.

**XIX.**

**DAMAGES FOR LOSS OF CONSORTIUM**

39. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

40. As a direct and proximate result of the injuries and damages detailed above with respect to Mr. Koog, and as a direct and proximate result of the acts and omissions of the Defendants, Mrs. Koog has also suffered and will continue to suffer loss of the consortium, support, devotion, care, society, companionship, fellowship and other valuable services of her husband; and therefore Mrs. Koog is entitled to damages for her loss of consortium, both past and future. Mr. Koog has been unable, and will be forever unable, to perform the necessary duties of a spouse and the work and service usually performed in the care, maintenance, and management of the family home, and Mr. Koog will be unable to perform such work, services, and duties in the future. As a proximate result thereof, Mrs. Koog has been permanently deprived and will be deprived of the consortium, support, devotion, care, companionship and fellowship of her spouse in an amount presently unknown to Plaintiff but which will be proved at the time of trial.

**XX.**

**PUNITIVE DAMAGES**

41. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

42. Defendants intentionally, knowingly or recklessly caused serious bodily injury and death to Mr. Koog. Defendants' acts were intentional because it was their desire to engage in the conduct that caused fatal injuries to Mr. Koog. In addition, Defendants' acts were committed knowingly because Defendants were aware of the nature of their conduct or that the circumstances existed that may cause serious bodily harm and death to Mr. Koog.

43. The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged herein above, whether taken separately or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or gross negligence resulting in Mr. Koog's injury, disease and death. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to Mr. Koog and should be punished by punitive damages.

44. Additionally, the actions, omissions, and/or undertakings of Defendants were of such a character as to make the Defendants guilty of malice. The conduct of the Defendants involved an extreme degree of risk, considering the probability and magnitude of potential harm to others including Mr. Koog. In addition, the Defendants had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others, including Mr. Koog. As a result of the conduct of Defendants, Plaintiff asks for punitive damages in such an amount as to be found to be proper, just and equitable under the facts and circumstances to influence the future conduct of Defendants.

45. Maritime law anticipates the availability of punitive damages. As established in Atlantic Sounding Co. v. Townsend, punitive damages have long been available at common law, and the common-law tradition of punitive damages extends to maritime claims. S*ee Atl. Sounding Co. v. Townsend*, 557 U.S. 404 (2009). The Court furthered that punitive damages have long been an available remedy at common law for wanton, willful, or outrageous conduct, Id at 409. This standard was recently reaffirmed in the Fifth Circuit Court of Appeals in *Kenai Ironclad Corp. v. CP Marine Servs., LLC*, 84 F.4th 600 (5th Cir. 2023).

46. As a result of the willful, wanton and gross misconduct and gross negligence of the Defendants as alleged herein, the Plaintiff seeks and requests those punitive damages contemplated by general maritime law. Defendants' malicious and outrageous disregard for the safety of users of asbestos products, including Plaintiff's Decedent, including but not limited to their intentional concealment of the dangers of asbestos that they knew of yet they consciously refused to warn users about evidences a conscious indifference to the safety and health of users and bystanders of the products they wrongfully profited from selling. Plaintiff, therefore, seeks punitive damages or exemplary damages, according to proof.

**WHEREFORE**, the Plaintiff prays for judgment against all Defendants, jointly, for actual and punitive damages, compensatory and special damages in amounts to be determined by the trier of fact, plus costs of this action, which will fairly and reasonably compensate Plaintiff.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

**HOTZE RUNKLE, PLLC**

By: /s/ Ryan C. Runkle
Ryan Christopher Runkle
Attorney-in-Charge
State Bar No 24011425
TX S.D. Bar No. 430465
ryan@hotzerunkle.com
1101 South Capital of Texas Hwy
Bldg. C, Suite 100
West Lake Hills, Texas 78746
512-476-7771 - Office
512-476-7781 – Fax

**Attorney for the Plaintiff**